Larry W. Lee (State Bar No. 228175)
lwlee@diversitylaw.com
**DIVERSITY LAW GROUP, P.C.**
550 S. Hope St., Suite 2655
Los Angeles, California 90071
(213) 488-6555
(213) 488-6554 facsimile

Attorneys for Plaintiff and the Class
 * Additional Plaintiff's Counsel Listed
  On Following Page

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY DYNABURSKY, as an individual and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br> vs.<br><br>ALLIEDBARTON SECURITY SERVICES, LP and ALLIEDBARTON SECURITY SERVICES, LLC; and DOES 1 through 50, inclusive,<br><br>    Defendants. | Case No.: SACV 12-02210 JST (RNBx)<br><br>(Assigned for all purposes to the Hon. Josephine Staton Tucker in courtroom 10A)<br><br>**MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date:    May 3, 2013<br>Time:    2:30 p.m.<br>Courtroom:  10A<br>Judge:   Hon. Josephine Staton Tucker |

## ADDITIONAL PLAINTIFF'S COUNSEL

Dennis S. Hyun (State Bar No. 224240)
dhyun@hyunlegal.com
**HYUN LEGAL, APC.**
550 S. Hope Street, Suite 2655
Los Angeles, CA 90071
Telephone:   (213) 488-6555
Facsimile:    (213) 488-6554

Edward W. Choi, Esq. SBN 211334
edward.choi@calaw.biz
Paul M. Yi, Esq. SBN 207867
paul.yi@calaw.biz
**LAW OFFICES OF CHOI & ASSOCIATES, P.C.**
3435 Wilshire Boulevard, Suite 2400
Los Angeles, CA 90010-2006
Telephone: (213) 381-1515
Facsimile: (213) 233-4409

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................1

II.  RELEVANT FACTS AND LAW.............................................2

III. ALL THE REQUIREMENTS FOR CLASS
     CERTIFICATION ARE MET ................................................8

     A.   The Requirements of Fed.R.Civ.P. 23(a) are Met ...........8

          1.   The Class and Subclasses Are Ascertainable and Meet
               Numerosity ..............................................................8

          2.   There Are Common Questions of Law and Fact.......................9

          3.   Representative Plaintiff's Claims are Typical............................10

          4.   The Adequacy Requirement is Met ............................................11

               a.  Plaintiff Is An Adequate Representative...............................11

               b.  Competent Class Counsel....................................................12

     B.   The Predominance Requirement of Fed.R.Civ.P.23(b)(3) is Met .....12

          1.   Failure to Provide Meal Breaks...................................13

          2.   Failure to Provide Unfettered Rest Breaks................................19

          3.   Failure to Provide Accurate Wage Statements...........................21

          4.   Plaintiff's Unfair Business Practices Claim ..............................22

     C.   A Class Action Is the Superior Method for Adjudication.................22

IV.  A CLASS-WIDE TRIAL IS MANAGEABLE ........................................23

V.   CLASS CERTIFICATION SHOULD BE GRANTED ........................24

VI.  CONCLUSION ..............................................................25

i

# TABLE OF AUTHORITIES

<u>Cases</u>

*Abdullah v. US Security*,  2011 U.S. Dist. LEXIS 156685 at *11-13 (C.D. Cal. Jan. 11, 2011) ....................................................... 17

*Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) .................................... 1

*Avilez v. Pinkerton Gov't Servs.*, 286 F.R.D. 450 (C.D. Cal. 2012) ......... passim

*Bibo v. Federal Exp., Inc.*, 2009 WL 1068880, *6 (N.D. Cal. 2009) ............. 18

*Blackie v. Barrack,* 524 F.2d 891 (0th Cir. 1975) ............................................ 23

*Bradley v. Networkers Int'l, LLC*, 211 Cal. App. 4th 1129 (2012) ............. 4, 20

*Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012) .............. passim

*Bufil v. Dollar Fin. Group, Inc.*, 162 Cal. App. 4th 1193 (2008) ................... 20

*California Rural Legal Assistance v. Legal Servs. Corp.*,
917 F.2d 1171 (9th Cir. 1990) ................................................................... 10

*Californians for Disability Rights v. Dept. of Transp.*,
249 F.R.D. 334 (N.D. Cal. 2008) ............................................................... 11

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ............................................................................... 22

*Delagarza v. Tesoro Ref. & Mktg. Co.*, 2011 U.S. Dist. LEXIS
101127, *2-*4 (N.D. Cal. Sept. 8, 2011)............................................... 17, 18

*Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625 (S.D. Cal. 2010) ............. 4, 25

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ......................... 9, 12

*Harris v. Palm Springs Alpine Estates, Inc.*,
329 F.2d 909 (9th Cir. 1964) ....................................................................... 9

*In re Cellular 101, Inc.*, 539 F.3d 1150 (9th Cir. 2008) ................................. 10

*In re Taco Bell Wage and Hour Actions*,
2012 WL 5932833, *4 (E.D. Cal. 2012) ..................................................... 20

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund*,
244 F.3d 1152 (9th Cir. 2001) ................................................................... 23

*Murphy v. Kenneth Cole Productions, Inc.*,
40 Cal. 4th 1094 (2007) .......................................................................... 3, 22

*O'Donnell v. TD Ameritrade, Inc.*,
2008 U.S. Dist. LEXIS 49829, at *11 (S.D. Cal. 2008).......................... 23

*Ortega v. J.B.Hunt Transport, Inc.*,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

258 F.R.D. 361, 374 (C.D. Cal. 2009)............................................20, 21, 24

*Otsuka v. Polo Ralph Lauren Corp.,*
251 F.R.D. 439, (N.D. Cal. 2008) ...................................................... 4

*Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319 (2004) ............ 22

*Schulz v. QualxServ, LLC,*
2012 WL 1439066, *7-8 (S.D. Cal. 2012) ..............................................4, 25

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ...................................... 11

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives &*
*Composites, Inc.*, 209 F.R.D. 159 (C.D. Cal. 2002)................................... 11

*United Steel Workers v. ConocoPhillips Co.,*
593 F.3d 802 (9th Cir. 2010) ............................................................... 18

*West v. Circle K Stores, Inc.*, 2006 U.S. Dist. LEXIS 42074 at *14
(E.D. Cal. June 13, 2006) ................................................................3, 16

**Statutes**

Business & Professions Code §§ 17200 ................................................... 22

Cal. Lab. Code § 226.7 ...............................................................2, 7, 14

Cal. Labor Code § 226.7(a) ...........................................................4, 20

Labor Code § 226 .......................................................................1, 24

Labor Code § 226(a) ........................................................................ 21

Labor Code § 226(e) ........................................................................ 21

**Rules**

Fed. R. Civ. P. 23 ........................................................................1, 8

Fed. R. Civ. P. 23(a) ........................................................................ 8

Fed. R. Civ. P. 23(a)(2) ..................................................................... 9

Fed. R. Civ. P. 23(a)(3) .................................................................... 10

Fed. R. Civ. P. 23(b) ........................................................................ 8

Fed. R. Civ. P. 23(b)(3) ................................................................12, 23

Fed. R. Civ. P. 30(b)(6) ..................................................................... 1

Fed. R. Civ. P. 8(c) ........................................................................ 16

**Treatises**

IWC Wage Order No. 4 §§ 11 ........................................................................ 7

IWC Wage Order No. 4 § 11(a) ............................................................. passim

IWC Wage Order No. 4 § 11(b) ................................................................ 3, 14

IWC Wage Order No. 4 § 12 ........................................................................ 7

IWC Wage Order No. 4 § 12(A) .................................................................... 3

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

# I.    INTRODUCTION

There is absolutely no rest for the weary.  That phrase epitomizes Defendant ALLIEDBARTON SECURITY SERVICES, LP's (hereinafter "Defendant" or "Allied")[1] undisputed class-wide written policy that forbids its security officers from resting during their legally mandated meal and rest breaks.  As will be further discussed herein, this admitted policy, not only applies to the entire Class, but is directly at odds with California's strict meal and rest break laws, which are intended to allow employees to enjoy unfettered rest during their meal and rest breaks.  This policy alone, and based on established case-law from this District and other Districts, is sufficient evidence for this Court to grant this Motion.

Defendant provides security services throughout the United States, including California, by placing their security officers at various clients' business locations.  Deposition of Michael Smidt [2] 16:16-24.  Plaintiff, on behalf of the Class of over 15,000 California security officers, including three (3) Subclasses, move for certification based on Defendant's unlawful statewide policies, practices, and procedures.  Specifically, Defendant's class-wide policies and procedures resulted in: (1) meal and rest period violations due to a uniform mandatory *written* policy that precludes security officers from resting during their meal and rest breaks ; (2) violation of labor code §226; and (3) unfair business practices.

All the requirements of Rule 23 are met.  Plaintiff, who is a member of the Class(es) and Subclass(es), can establish his claims in a readily manageable trial using common proof on behalf of the current and former California security officer

---

[1] While Plaintiff's Complaint names both AlliedBarton Security Services LP and AlliedBarton Security Services LLC as co-defendants, Plaintiff only seeks this Motion against Defendant AlliedBarton Security Services LP as Defendant has admitted it is the only entity that employs security officers in California and that AlliedBarton Security Services LLC does not employ anyone in California.

[2] Cited transcript excerpts of the FRCP 30(b)(6) deposition of Defendant's designated witnesses testifying for the company, Michael Smidt and Kevin Hudson, are attached to the Declaration of Larry W. Lee (hereinafter "Lee Decl.") ¶ 2, as Exhibits "A" and "B" respectively.  Mr. Smidt's deposition shall hereinafter be cited to as "Smidt Dep. page:line" and Mr. Hudson's deposition shall hereinafter be cited to as "Hudson Dep. page:line."

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

1  employees of Defendant.  Defendant's undisputed and admitted records and

2  statewide company policies and practices are uniformly applied and result in

3  common detriment to the Classes and Subclasses.  Each of the alleged violations

4  constitutes a common and predominant legal issue.  Further, even the defenses

5  Defendant will likely raise, support certification because they are class-wide

6  defenses, for example, that Defendant's "On-Duty Meal Period Agreement" is

7  valid.  Further defenses regarding frequency of damages can be easily addressed.

8  Therefore, class certification is proper.

9  **II.   RELEVANT FACTS AND LAW**

10         Labor Code § 226.7 requires employers to provide meal breaks to employees

11  in compliance with the applicable California Industrial Welfare Commission

12  ("IWC") Wage Order, which in this case, is IWC Wage Order No. 4.  Section 11(a)

13  of said IWC Wage Order provides that employees who work in excess of five

14  hours a day must be provided with a 30-minute meal break and, further, that

15  employees who work in excess of ten hours per day must be provided with a

16  second 30-minute meal period.  The 30-minute meal break can be mutually waived

17  if the employee's total work shift is 6 hours or less.  Further, as the IWC Wage

18  Order holds, such meal periods must be ***unfettered*** – i.e., when taking such meal

19  periods, the employee must be "***relieved of all duty***" during the entire 30-minute

20  meal period.  IWC Wage Order No. 4 § 11(a) (emphasis added).  Indeed, this was

21  recently affirmed by the California Supreme Court in *Brinker Rest. Corp. v.*

22  *Superior Court*, 53 Cal. 4th 1004, 1040-41 n. 19 (2012) ("[t]he employer that

23  refuses to relinquish control over employees during an owed meal period violates

24  the duty to provide the meal period and owes compensation").

25         Should an employer fail to provide an employee with a meal period pursuant

26  to the requirements of the IWC Wage Order, the employer must pay the employee

27  a premium payment of one additional hour of pay for each work day that a meal or

28  rest period is not provided in conformance therewith.  *See* Cal. Lab. Code § 226.7;

IWC Wage Order No. 4 § 11(b).  Such premium payment, pursuant to the California Supreme Court's holding in the case of *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal. 4th 1094 (2007), is deemed as a ***wage***, and not a penalty. *Id*. at 1114.

As the IWC Wage Order further states, if the employee is not "relieved of all duty" during the meal period, then the meal break will be deemed as an "on-duty" meal break.  IWC Wage Order No. 4 § 11(a).  However, in order to qualify for an "on-duty" meal break exception, the ***employer*** must (1) show that the nature of the work prevents an employee from being relieved of ***all*** duty and (2) that a written agreement is entered into between the employer and the employee agreeing to an "on-the-job paid meal period," with the agreement stating that the employee may, in writing, revoke the agreement at any time.  *Id*. (emphasis added).  As the Eastern District of California held, the on-duty meal break exception is provided to allow employers some relief "when the nature of the work ***in their business overall*** does not permit a mid-shift meal break" as opposed to looking at each work shift on an individual basis.  *West v. Circle K Stores, Inc.*, 2006 U.S. Dist. LEXIS 42074 at *14 (E.D. Cal. June 13, 2006).

With respect to rest breaks, the law is even stricter as such breaks cannot be waived nor can they be taken "on-duty."  Specifically, IWC Wage Order No. 4 § 12(A) holds as follows:

> Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 ½) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

As made clear by the California Supreme Court in *Brinker*: "[e]mployees are entitled to 10 minutes rest for shifts from three and one-half to six hours in length,

1   20 minutes for shifts of more than six hours up to 10 hours, 30 minutes for shifts of

2   more than 10 hours up to 14 hours, and so on." 53 Cal. 4th at 1029; *accord Bradley*

3   *v. Networkers Int'l, LLC*, 211 Cal. App. 4th 1129, 1142-44 (2012) (same).

4          In addition, an employee's rest break (as well as meal breaks) must also be

5   taken "off-duty" and unfettered by the employer.  Cal. Labor Code § 226.7(a).

6   Courts have consistently agreed and held that employers may not impose any

7   limits on any breaks, including rest breaks, such as dictating what the employee

8   can do during breaks, or discourage or impede breaks.  *See, e.g.*, *Dilts v. Penske*

9   *Logistics, LLC*, 267 F.R.D. 625, 640 (S.D. Cal. 2010) (holding that class

10  certification of rest and meal period claims was warranted where the plaintiffs

11  were required to use Nextel pagers during breaks and stay in communication and

12  breaks were not permitted until all work was finished); *Bradley*, 211 Cal. App. 4th

13  at 1144 (for an employer to satisfy its break requirements, it must "relieve its

14  employees of all duty and ***relinquish all control over their activities*** and not

15  impede or discourage them from doing so") (emphasis added).[3]

16         As also explained by the California Division of Labor Standards

17  Enforcement (the "DLSE"), the state agency charged with enforcing and

18  interpreting California's wage and hour laws, rest breaks must be "duty-free."

19  DLSE Opinion Letter, Feb. 22, 2002; DLSE Opinion Letter, Jan. 3, 1986

20  (explaining that the purpose of the rest period requirements was to "[e]nsure that

21  the employee would be free from work for ten minutes").[4]

22         Finally, it must be noted that, unlike meal breaks which have an "on-duty"

23  meal break exception, there are no such on-duty exceptions for rest breaks under

---

24

25  [3] *See also Schulz v. QualxServ, LLC*, 2012 WL 1439066, *7-8 (S.D. Cal. 2012) ("[t]he [*Brinker*]
    Court held that 'an employer's obligation is to relieve its employees of all duty with ***the***
26  ***employee thereafter at liberty to use the meal period for whatever purpose he or she desires***";
    pursuant to the *Brinker* standard, the District Court held that class certification was appropriate
27  because "Plaintiffs challenge the Defendants' common corporate policy of failing to relieve the
    technicians of all work during the rest and meal breaks") (emphasis added); *Otsuka v. Polo*
28  *Ralph Lauren Corp*., 251 F.R.D. 439, 442, 447 (N.D. Cal. 2008) (same).
    [4] True and correct copies of the DLSE Opinion Letters are attached as Exhibits to Plaintiff's
    Request for Judicial Notice.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION**

California law.  Thus, employee rest breaks must be given in an unfettered manner no matter what the nature of the job entails.

As testified to by Defendant, after an employee is offered employment as a security officer and such employment is accepted, the employee goes through a training/orientation session, which is called Security Officer Basic Course or "SOBC," before actually starting work.  Smidt Dep. 26:2-30:8; 42:6-22; 51:18-52:13.  It is during the SOBC that each employee is presented with Defendant's "Security Officer Handbook – For Employees in California" which describes the rules and regulations for working as security officer for Defendant.  Smidt Dep. 22:13-24:13; 45:1-5; 83:6-85:8.[5]  On pages 13 through 14 of both the current and prior versions of Defendant's Security Officer Handbook, it lists a number of rules, regulations and guidelines Defendant expects its security officers to abide by.  Smidt Dep. Exh. 4 & 10.  As it states, "[t]he following list identifies conduct that will result in disciplinary action," which is then followed by a number of specific rules.  *Id*.  Of particular importance is Rule No. 26, which states "***Sleeping or dozing while on duty (including lunch and breaks)***."  *Id*. (emphasis added).  In other words, if a security officer sleeps or dozes (i.e., take a rest) during his/her lunch or rest break, the security officer is subject to discipline by Defendant, including termination of employment.  Further, each and every employee is required to acknowledge and sign the "Receipt of Employee Handbook" which specifically states that "As a condition of my employment, I agree to abide by the rules and regulations contained therein."  *See* Smidt Dep. Exh. 4 at p. 37 & Exh. 10 at p. 38; Declaration of Gregory Dynabursky ("Dynabursky Dec."), Exh. A.

It is also during this SOBC that each employee is presented with an On Duty Meal Period Agreement.[6]  Smidt Dep. 41:5-42:22, 44:9-12.  While Defendant

---

[5] Copies of Defendant's current and previous versions of its "Security Officer Employee Handbook – For Employees In California" are attached as Exhibits 4 and 10 to the Smidt Deposition transcript.

[6] Copies of Defendant's On Duty Meal Period Agreements are attached as Exhibits 6 and 7 to the Smidt Deposition transcript.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

claims that the On Duty Meal Period Agreement is "voluntary" and not a requirement, the truth of the matter is that all employees must sign the On Duty Meal Period Agreement to be hired and to actually begin working.  Smidt Dep. 49:5-9.  As Defendant testified, if an employee does not sign the On Duty Meal Period Agreement, the employee would not be given a position to work after completing the SOBC, but instead, the employee would have to re-interview again to see if there was a job available.  Smidt Dep.  49:10-15.  Indeed, although Defendant claimed it did not know what percentage of its employees have signed the On Duty Meal Period Agreement, it admitted that the majority of its employees have indeed signed the On Duty Meal Period Agreement.  Smidt Dep. 55:2-8.

Similarly, when asked what percentage of employees are required to take on-duty meal breaks as part of their work shifts, despite being designated as the "Person Most Knowledgeable" on this particular topic, Mr. Smidt claimed that he did not know, although he eventually testified that at least over 50% of the employees are required to work on-duty meal break shifts.  Smidt Dep.  129:7-14.

As explained by Mr. Smidt and Defendant's own written policies, an on-duty meal break means that the security officer must eat his/her meal while on duty without being relieved of his/her job duties.  Smidt Dep.37:14-19, 38:2-10, 38:20-39:2, 40:2-5, 41:5-42:22, 60:9-17, Exh. 6 & 7.  Specifically, Defendant's on-duty meal break policy prevents the security officer from leaving the client site during meal breaks, and that the security officer is required to remain on duty.  Smidt Dep. 72:21-73:2, 93:21-94:6, Exh. 6 & 7.  In other words, the security officer cannot be relieved of all duties when they are working an on-duty meal break work shift.

With respect to recording the actual taking of meal breaks, as again identified on page 27 of its Security Officer Employee Handbooks (both the current and prior versions), employees that take a true off-duty meal break are required to clock out at the start of their meal break, and then clock back in at the

end of their off-duty meal break, so that their meal break time is recorded on their time records.  See Smidt Dep. Exhs. 4 & 10.  Further, as testified to by Defendant, should an employee take an off-duty meal break and clock out/in, such time records would ultimately be uploaded to Defendant's payroll system, known as Win-Team System.  Hudson Dep. 20:3-13, 22:18-23:11, 23:12-24:11, 32:25-33:9.  Indeed, Defendant can easily obtain and print out the entirety of each security officer's daily time records, known as the "Timekeeping Report," from the Win-Team System.  Hudson Dep. 43:21-44:16; 53:22-54:2.[7]  Moreover, as testified to by Defendant, and as clearly shown on the Timekeeping Report, there is a column entitled as "Lunch" which Defendant testified that it is to track the amount of time an employee took for his/her meal break.  Hudson Dep. 43:21-44:16; 48:14-50:7.

Plaintiff was no different.  During his employment with Defendant, he was also required to not only sign the On Duty Meal Period Agreement, but also actually work shifts that required him to take on-duty meal breaks.  Dynabursky Dec. ¶¶ 6.  Similarly, during his employment with Defendant, Plaintiff was not allowed to take unfettered/duty-free rest breaks.  Dynabursky Dec. ¶3-5.  Instead, Plaintiff was required to keep his communication radio in operation, respond to any calls, and not allowed to sleep, nap, or take any true rest.  Dynabursky Dec. ¶3-5.

It is Plaintiff's position that Defendant's company-wide written policy forbidding security officers from taking any unfettered off-duty meal and rest breaks is invalid, unlawful and constitute as violations of California Labor Code § 226.7 and IWC Wage Order No. 4 §§ 11 & 12.  Based on such admitted company-wide policies, class certification based on such claims should be granted.  Indeed, to the extent Defendant attempts to assert a defense under the on-duty meal break exception (which it cannot), such a defense can and must still be tried on a class-wide basis as set forth under case law precedent.

---

[7] A copy of Plaintiff's Timekeeping Report is attached to the Smidt Deposition Transcript as Exhibit 9.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

For the reasons explained above, and as further described below, Plaintiff respectfully requests that this Court grant the current Motion.

## III.  ALL THE REQUIREMENTS FOR CLASS CERTIFICATION ARE MET

Rule 23 of the Federal Rules of Civil Procedure authorizes class actions when the class is so numerous that joinder of all members is impracticable, there are questions of law or fact common to the class, the claims or defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and adequately protect the interests of the class. *See* FED. R. CIV. P. 23(a).  Additionally, the requirements of at least one subsection of Rule 23(b) must be satisfied.

Plaintiff here seeks to certify (1) all of Defendant's past and present California employees who worked more than 6 hours in any work shift as a Security Officer from December 21, 2008 through the present; and (2) all Defendant's past and present California employees who worked 3.5 hours or more in any work shift as a Security Officer from December 21, 2008 through the present.  Plaintiff additionally seeks certification of three Subclasses of current and former employees who worked for Defendant as follows:

> (a) all of Defendant's past and present California employees who worked more than 6 hours in any "on-duty meal break" work shift as a Security Officer from December 21, 2008 through the present;
>
> (b) all of Defendant's past and present California employees who worked more than 6 hours in any "on-duty meal break" work shift as a Security Officer from December 21, 2008 through the present who received itemized wage statements; and
>
> (c) all of Defendant's past and present California employees who worked 3.5 hours or more in any work shift as a Security Officer from December 21, 2008 through the present who received itemized wage statements.

### A.  The Requirements of FED. R. CIV. P. 23(a) are Met

#### 1.  The Class and Subclasses Are Ascertainable and Meet Numerosity

Rule 23(a)(1) requires the proposed classes to be "so numerous that joinder of all members is impracticable." "'Impracticabilty' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted).

The Classes and Subclasses are both ascertainable, from Defendant's own records, and are sufficiently numerous. All of Defendant's California Security Officers are non-exempt hourly paid employees. Smidt Dep. 16:25-18:14. In addition, Defendant admits that the typical (or most of the) security officer work shift is an 8 hour shift. Smidt Dep. 63:3-9. Moreover, Defendant has identified that there are well over 15,000 individuals who fall within the putative class. Defendant's Responses to Plaintiff's Special Interrogatory Set One, Nos. 2 &3 (Defendant has employed over 15,600 security officers in California during the class period).[8] As already discussed above, more than half of its work shifts require an on-duty meal break. Similarly, Defendant has admitted that every security officer receives an itemized wage statement/pay stub with each pay check. Hudson Dep. 20:20-21:24. Thus, the numerosity would be equally satisfied for the Sub-classes. Further, based on the Class size, only a very small percentage – as little as 1% -- would be required to satisfy the numerosity requirement as to each Subclass. Thus, Plaintiff has satisfied the numerosity requirement for the Classes and Sub-Classes he seeks to certify.

## 2.  There Are Common Questions of Law and Fact

There must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement "has been construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Indeed, "[t]he existence of even one significant issue common to the class is sufficient to warrant certification." *Californians for Disability Rights v. Dept. of Transp.*, 249 F.R.D.

---

[8] A true and correct copy of Defendant's Responses to Plaintiff's Interrogatories Set No. One is attached to the Declaration of Larry Lee ("Lee Dec.") as Exhibit D.

334, 346 (N.D. Cal. 2008). Commonality is satisfied "where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). This case only contains a limited number of questions of law and fact, all of which easily satisfy the commonality requirement as to the Classes and Subclasses seeking certification in this action:

- Does Defendant's own written company-wide policy of precluding security officers from resting during their meal breaks result in Defendant's failure to provide off-duty meal breaks in violation of California law?
- Does Defendant's own written company-wide policy of precluding security officers from resting during their rest breaks result in Defendant's failure to provide off-duty rest breaks in violation of California law?
- Does Defendant's wage statements violate Labor Code § 226 based on the above meal and break violations?
- Are any of the above violations unlawful, unfair or fraudulent business practices in violation of Business & Professions Code §§ 17200 *et seq.*?

As recently held by Judge Carter in a nearly identical case, such questions sufficiently meet the commonality requirement. *See Avilez v. Pinkerton Gov't Servs.*, 286 F.R.D. 450, 465-66 (C.D. Cal. 2012). Based thereon, there exist common questions of law and fact.

### 3.   Representative Plaintiff's Claims are Typical

In *Hanlon*, the Ninth Circuit held that under Rule 23(a)(3)'s permissive standards, "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. It is enough if named Plaintiff and class members share a "common issue of law or fact.'" *California Rural Legal Assistance v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990) (citations omitted). Under the low threshold of typicality, all that is required is that each plaintiff has an incentive

to prove defendant's liability. *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 165 (C.D. Cal. 2002).

Here, typicality is readily satisfied. The proposed representative Plaintiff seeks recovery based upon the same legal theories and factual circumstances as the Classes and Subclasses he is in. The claims in the current case rise and fall on the *sole* determination of whether Defendant's written company-wide policy that forbids security officers from sleeping or resting during their meal and rest breaks is legally valid. To the extent Defendant attempts to assert a defense under the "on-duty" meal period exception, which would only apply to a subclass, class certification should still be granted under the established case law of this District (and other Districts).

For such reasons, Plaintiff's claims are typical of those of the class members.

### 4. The Adequacy Requirement Is Met

To determine whether the class representative meets the standard of Rule 23(a)(4), two questions are asked: "(1) Does the representative Plaintiff and his counsel have any conflicts of interest with other class members, and (2) will the representative Plaintiff and his counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citations omitted).

#### a. Plaintiff Is An Adequate Representative

As established above, Plaintiff shares common interests with the defined Classes and Subclasses, have claims typical of class members' claims, and are fully prepared to take all necessary steps to fairly and adequately represent the Classes and Subclasses he represents. Dynabursky Dec. ¶¶ 8-10. No conflicts of interest exist and the representative will continue to adequately and vigorously prosecute this action. Dynabursky Dec. ¶¶ 8. Plaintiff has agreed to abide by all of the necessary duties of a class representative, including assisting counsel in the

litigation.  Dynabursky Dec. ¶¶ 9-10. Accordingly, Plaintiff is an adequate representative.

### b.    Competent Class Counsel

As detailed in their declarations, Plaintiff's Counsel are experienced class action litigators who have litigated many wage and hour class actions and have each been certified as class counsel in numerous other class actions, particularly wage and hour class actions.  Lee Decl. ¶¶ 2-7; Declaration of Edward Choi ("Choi Dec.")¶ 5.  Plaintiff's Counsel has diligently litigated this case, and will continue to do so.  Plaintiff's Counsel has taken the deposition of Defendant's 30(b)(6) witnesses on two separate occasions, propounded and responded to discovery, and have pursued matters in law and motion as deemed necessary.  Lee Dec. ¶¶ 8-13; Declaration of Dennis Hyun ("Hyun Dec."). ¶ 9; Choi Decl.¶¶ 3, 7.  Plaintiff's Counsel's only relationship with Plaintiff is the attorney-client relationship in this matter.  Lee Decl. ¶ 10; Hyun Dec. ¶ 10; Choi Decl.¶ 8.  Accordingly, Plaintiff's Counsel is adequate and will continue to vigorously prosecute this action on behalf of the class.

### B.    The Predominance Requirement of FED. R. CIV. P. 23(b)(3) is Met

Rule 23(b)(3) requires two separate inquiries: (1) do issues common to the class "predominate" over issues unique to individual class members; and (2) is the proposed class action "superior" to other methods available for adjudicating the controversy.  *See* FED. R. CIV. P. 23(b)(3).  Here, the requirements of Rule 23(b)(3) are satisfied.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at  1022 (citation omitted).  Plaintiff contends that Defendant has uniform practices and policies which resulted in Labor Code violations.  The evidence shows that Defendant has centralized and standardized operations which will support

certification here.  Each of the claims is predicated on common uniform written policies that apply equally company-wide, making Plaintiff's claims ideally suited for class action treatment.

Specifically, Defendant provides all security officers with the same employee handbook.  Smidt Dep. 22:13-24:13; 45:1-5; 83:6-85:8, Exhs. 4 & 10.  Both the current and previous versions of the handbook contain the identical "Employee Conduct and Work Rules" policy regarding the security officers' inability to take unfettered rests during their meal and rest breaks.  Smidt Dep. Exhs. 4 & 10.  Specifically, both the current and prior versions of the Security Officer Employee Handbook state that an employee is precluded from "Sleeping or dozing while on duty *(including lunch and breaks)*" and that if the employee breaks this rule, he/she will be subject to discipline, including termination.  Indeed, ***each and every security officer is required to sign and acknowledge that he/she will abide by such rules, or be subject to discipline***.  *See* Smidt Dep. Exh. 4 at p. 37 & Exh. 10 at p. 38; Dynabursky Dec., Exh. A.

Further, Defendant's Security Officers' time and payroll records are retained, stored, and can easily be accessed by Defendant, including the amount of time an employee took for an off-duty meal break (if any).  Hudson Dep.  43:21-44:16; 48:14-50:7; 53:22-54:2.  Thus, Defendant's operations and policies are standardized and Plaintiff can easily refer to such policies and records to show class-wide violations and to determine a measure of damages, thus rendering Plaintiff's claims ideally suited to class treatment.  These records and common policies will also show that common questions predominate as to the claims asserted by Plaintiff on behalf of the Classes and the Subclasses he represents.

### 1.     Failure to Provide Unfettered Meal Breaks

Labor Code § 226.7 requires employers to comply with California Industrial Welfare Commission ("IWC") Wage Order No. 4 § 11(a) regarding meal periods.  Section 11(a) provides that employees who work in excess of five hours a day

must be provided with a 30-minute meal break and, further, that employees who work in excess of ten hours per day must be provided with a second 30-minute meal period.  However, if, ***and only if***, the employee's work shift is 6 hours or less, then the meal break may be mutually waived.  Further, as the IWC Wage Order holds, such meal periods must be unfettered – i.e., when taking such meal periods, the employee must be "relieved of all duty" during the entire 30-minute meal period.  IWC Wage Order No. 4 § 11(a).  As the IWC Wage Order further states, if the employee is not "relieved of all duty" during the meal period, then the meal break will be deemed as an "on-duty" meal break.  *Id*.  However, in order to qualify for an "on-duty" meal break, the employer must meet certain requirements, as further discussed below.  *Id*.

Finally, should an employer fail to provide an employee with a meal period pursuant to requirements of IWC Wage Order, the employer must pay the employee a premium payment of one additional hour of pay for each work day that a meal or rest period is not provided.  *See* Cal. Lab. Code § 226.7; IWC Wage Order No. 4 § 11(b).

Defendant clearly failed to provide meals in compliance with California law. As its own employee handbook states, security officer employees are not allowed to sleep or rest during their meal breaks, and thus, such employees are still subject to control by Defendant even during their supposed "duty-free" meal breaks. Indeed, as recently discussed by the California Supreme Court, "***[e]mployers must afford employees uninterrupted half-hour periods in which they are relieved of*** any duty or ***employer control*** and are free to come and go as they please.  *Brinker*, 53 Cal. 4th at 1037 (emphasis added).  As the California Supreme Court further stated, the very purpose and public policy of meal and rest breaks is to protect employees and allow them to take rests.  *Id*. at 1037-38.

Here, Defendant's own written company-wide policy is a clear violation of California's meal break rules, as it specifically precludes the security officer from

resting during his/her meal break, and further subjects the security officer to

Defendant's continued control.  Thus, the predominant issue here is whether

Defendant's own written company-wide policy of precluding security officers from

resting during their meal breaks result in Defendant's failure to provide off-duty

meal breaks in violation of California law.  As Judge Carter recently held in the

published class certification ruling from *Avilez*, this very question is sufficient in

finding predominance for purposes of class certification.  *Avilez*, 286 F.R.D. at

466-69 (in granting class certification to a group of security officer employees,

Judge Carter held that the common question of "Did Defendant's policy requiring

that each Security Guard take only an 'on-the-job meal period' result in

Defendant's practice of failing to provide off-duty meal periods, thus violating

California Labor Code 226.7 and Wage Order 4-2001 § 11" to predominate).  Just

as in *Avilez*, here, Plaintiff's *prima facie* case of establishing Defendant's failure to

provide off-duty meal breaks will be based on Defendant's own words and conduct

(*i.e.*, Defendant's written policies and timekeeping report records).  *Id*. at 469.

Plaintiff expects Defendant to rely upon the "on-duty meal" exception as its

main defense to this Motion.  It is critical to acknowledge that the "on-duty meal"

exception is an affirmative defense and that the employer is required to establish

each and every one of the elements in order to meet this exception.  *Avilez*, 286

F.R.D. at 463 (*holding* "the statutory exception allowing for on-duty meal breaks

where the "nature of the work" and other requirements are met is an affirmative

defense for which Defendant bears the burden").  Further, in order to meet this

exception, the employer must show (1) show that the nature of the work prevents

an employee from being relieved of ***all*** duty and (2) that a written agreement is

entered into between the employer and the employee agreeing to an "on-the-job

paid meal period," with the agreement stating that the employee may, in writing,

revoke the agreement at any time.  IWC Wage Order No. 4 § 11(a).  Such a

defense is meritless and is not an appropriate argument to deny this Motion for

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

numerous reasons.

First, Defendant is not entitled to the "on-duty" meal period defense due to the fact that Defendant has waived this defense as it has not asserted this defense as an affirmative defense in its Answer to Plaintiff's Complaint. Specifically, nowhere in its Answer to Plaintiff's Complaint, including the twenty four (24) affirmative defenses it asserted, does Defendant identify the "on-duty" meal period exception as a defense. Thus, under established case law, Defendant's failure to assert this defense in its Answer constitutes as a waiver and, therefore, Defendant cannot rely upon any such defense. *See*, *e.g.*, *In re Cellular 101, Inc*., 539 F.3d 1150, 1155 (9th Cir. 2008) (reiterating that affirmative defenses must be pled in the answer or they are waived) (citing FRPC 8(c) ("[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense"); *Bibo v. Federal Exp., Inc.*, 2009 WL 1068880, *6 (N.D. Cal. 2009) (holding that employer waived collateral estoppel defense to meal break claim because it was not pled in its answer).

Second, even if the on-duty meal exception argument is considered (which it should not be), such a defense is to be tried on a class-wide basis, and not on an individualized basis as Defendant will attempt to argue. Indeed, the established case law of this District and other District Courts hold that the on-duty meal exception factors are to be determined on a class-wide basis. Specifically, starting with *West v. Circle K Stores*, the U.S. District Court considered this exact argument and ***rejected it***. 2006 U.S. Dist. LEXIS 42074 at *13-*14 (E.D. Cal. June 13, 2006). In particular, the Court stated as follows:

> At all times during the proposed the class period, defendant required employees to sign some form of "meal period agreement" (or waiver) that included the nature of the work exception. Nevertheless, ***defendant originally argued that evaluating the enforceability of the waiver would require an individual inquiry into the nature of each employee's work on every shift where that employee missed a meal break***.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Depending on the traffic in a given store on a given shift, defendant argued, the nature of the work may have precluded an off-duty meal break, and these individual inquiries defeat commonality.

However, this argument would again involve the court in a determination of the merits of the case. The parties have not provided the court with any authority establishing that the nature of the work exception applies on a case-by-case, shift-by-shift basis. ***Indeed, such a rule would potentially eviscerate the protections provided by California Labor Code § 226.7, as every employer would defend against a claim of missed meal periods by arguing that, because of the nature of the employee's work on that day, he was too busy to take a break. Instead, the exception was more likely provided to allow employers some relief when the nature of the work in their business overall does not permit a mid-shift meal break***.

*Id.* If this is not enough, the Central District itself has agreed that the on-duty meal exception is to be determined on a class-wide basis, and not subject to individualized inquiry. For example, in *Avilez*, the Court also agreed that the on-duty meal exception is to be determined on a class-wide basis. *Avilez*, 286 F.R.D. at 470-71. Similarly, Judge King in *Abdullah v. U.S. Security Assocs.*, in granting class certification on nearly identical facts, also rejected the argument that this defense would require individualized inquiry. 2011 U.S. Dist. LEXIS 156685 at *11-13 (C.D. Cal. Jan. 11, 2011). These are the legal authorities from other District Courts that are directly on point, and which completely rejects Defendant's current argument. It is doubtful that Defendant will be able to provide any authority to dispute these holdings.

Notwithstanding, other recent rulings from other District Courts further support Plaintiff's argument. In *Delagarza v. Tesoro Ref. & Mktg. Co.*, the employees were also subjected to on-duty meal breaks, which plaintiffs alleged were unlawful. 2011 U.S. Dist. LEXIS 101217, *2-*4 (N.D. Cal. Sept. 8, 2011).

17

1  In granting class certification of this claim, the Court also considered and rejected

2  defendant's argument that the various job duties of the employees required

3  individual inquiries into the nature of the work defense.  *Id*. at *19-*20.  However,

4  the legal authority in support of Plaintiff's position does not stop there.  In fact, the

5  Ninth Circuit has ruled upon the class certification issue as it relates to on-duty

6  meal breaks in *United Steel Workers v. ConocoPhillips Co.*, 593 F.3d 802 (9th Cir.

7  2010).  In reversing a denial of class certification on an on-duty meal break claim,

8  the Ninth Circuit held that the District Court was to look at the ***actual theory***

9  ***presented by the plaintiffs*** and whether it presented common questions of law or

10  fact.  *Id*. at 808.  Indeed, the Ninth Circuit's ruling was specifically relied upon by

11  the *DeLagarza* Court in granting class certification.  *DeLagarza*, 2011 U.S. Dist.

12  Lexis 101127 at *44-*45.  *United Steel Workers'* holding has been further

13  supported by the California Supreme Court's ruling in *Brinker*, wherein the

14  California Supreme Court held that on a class certification motion regarding meal

15  breaks, "a trial court must ***examine the plaintiff's theory of recovery***, asses the

16  nature of the legal and factual disputes likely to be presented, and decide whether

17  individual or common issues predominate."  *Brinker*, 53 Cal. 4th at 1025.

18  Indeed, the fact that Defendant presents the identical "On-Duty Meal Period

19  Agreement" to each employee during its orientation and, thus, does so on a class-

20  wide basis, is inconsistent with its "after-the-fact" individualized inquiry argument.

21  In other words, if Defendant now attempts to argue that the on-duty meal exception

22  requires individualized inquiry depending on each person's jobs, duties, etc… then

23  Defendant should not be presenting its On Duty Meal Agreement to all of its

24  employees on a wholesale basis, but rather should be presented to the employee

25  when the actual job position meets the requirements for an on-duty meal period.

26  Finally, even assuming Defendant is allowed to argue that the on-duty meal

27  exception requires individualized inquiry, the facts still support certification as the

28  nature of the security officer's jobs are nearly identical.  For example, in its

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Security Officer Employee Handbook, on pages 5 to 7, it gives a detailed description of what the typical job duties are for a security officer. See Smidt Dep. Exhs. 4 & 10. Further, the job advertisements posted by Defendant on its own website show that the job duties for various different locations are indeed nearly identical. See Exh. E to Lee Declaration. Thus, any argument by Defendant that each position's job duties are varied and thus requiring an individualized inquiry is not supported by Defendant's own written documents, and thus any such argument is meritless and cannot be used to defeat class certification. *See also Avilez*, 286 F.R.D. at 471-72 fn. 24.

In essence, the requirement of an admitted written policy of precluding security officers from taking any actual rest during their meal and rest breaks, and which is subjected upon all of their employees, are class issues. Defendant may argue the validity of the on-duty meal agreements or that despite requiring on-duty meals there is no violation of the law. But even these defenses support a grant of certification as these are class issues as well. Whatever the outcome on these claims and defenses, the class vehicle would be the most efficient way to deal with such claims and defenses.

### 2. Failure to Provide Unfettered Rest Breaks

There should be no reason to deny class certification to this claim as Defendant's written company-wide policy is perfectly suited to try this claim on a class-wide basis. As already discussed above, Defendant's written policy specifically forbids its security officers from resting during their rest breaks. See Smidt Dep. Exhs. 4 & 10. In fact, even Defendant's own testimony supports this illegal policy. For example, Defendant testified that certain sites require officers to keep communication devices on them during rest breaks and that they are subject to call back during their rest breaks. Smidt Dep. 114:8-116:13. Even for those security officers who do not carry communication devices, such employees are still subject to being called back while on their rest breaks. Smidt Dep. 116:23-117:11.

Indeed, this very well explains why the security officers are forbidden from taking a nap or rest during their rest breaks (and meal breaks); because they are continuously on-call, working, and subject to Defendant's control during the breaks.

Thus, because Defendant is able to dictate and control what the security officer is able to do on his/her rest break, the rest break is not unfettered and the security officer continues to be under Defendant's control.

As discussed above, California law specifically requires employees to be free of any employer control during their rest break, and to take such breaks in an unfettered manner. Cal. Labor Code § 226.7(a). Further, while Defendant may attempt to argue the on-duty meal exception to Plaintiff's meal break claim, no such exception or waiver exists for rest breaks. Indeed, this was specifically ruled upon by the California Supreme Court. *See Brinker*, 53 Cal. 4th at 1033. As the California Supreme Court admonished: "[a]n employer is required to authorize and permit the amount of rest break time called for under the wage order for its industry. If it does not ... it has violated the wage order and is liable. **No issue of waiver ever arises for a rest break that was required by law but never authorized**; if a break is not authorized, an employee has no opportunity to decline to take it." *Id.* (emphasis added); *see also Bradley*, 211 Cal. App. 4th at 1143-44 (same); *Bufil v. Dollar Fin. Group, Inc.*, 162 Cal. App. 4th 1193, 1205 (2008) ("the purported meal period waivers had nothing to do with the rest period claims **because an employee cannot waive such claims**"; "[t]he permitted waiver of the meal requirement applies only to meal periods, **not to rest breaks**") (emphasis added).[9]

---

[9] *See also Ortega v. J.B. Hunt Transport, Inc.*, 2012 WL 6708161, *2 (C.D. Cal. 2012) ("*Brinker* requires that an employer must sufficiently provide a break before an employee's reasons for foregoing the break become analytically significant"); *In re Taco Bell Wage and Hour Actions*, 2012 WL 5932833, *4 (E.D. Cal. 2012) ("Plaintiffs' claim is based on a facially unlawful policy, making any issues of waiver irrelevant"); *Avilez*, 286 F.R.D. at 471 ("Given that the nature of the work was irrelevant to the law governing rest breaks, the document that the defendant required employees to sign stating that the nature of work prevented off-duty meal breaks was not

Here, based on Defendant's admitted written policy, it can hardly be said that its security officers were authorized to take unfettered rest breaks. Rather, the opposite is true. For each and every rest break that is authorized, the security officer continues to be under Defendant's control through its policy preventing the security officer from taking a true rest break. Because Plaintiff's rest break claim rises and falls entirely upon Defendant's written policy, and nothing else, class certification should be granted in this regard.

### 3.    Failure to Provide Accurate Wage Statements

Labor Code Section 226(a) requires employers to keep accurate records and provide itemized wage statements every pay period, which include:

> (1) gross wages earned, (2) total hours worked … (5) net wages earned, … (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

Courts have held that when an employee's wage statements are incorrect, the employee automatically suffers injury, as required by Labor Code § 226(e), because, among other things, the employee might not be paid wages to which he/she is entitled and would face the necessity of bringing a lawsuit. *See Ortega v. J.B.Hunt Transport, Inc.*, 258 F.R.D. 361, 374 (C.D. Cal. 2009). Indeed, in the *Avilez* case, in granting certification upon the underlying meal break claims, the Court also certified the attendant Labor Code § 226 claims as such claims are predicated upon the meal break claims. *Avilez*, 286 F.R.D. at 472-73. Moreover, Labor Code § 226 (e) has been recently amended to state that "[a]n employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide accurate and complete information as required by any one or more of the items (1) to (9), inclusive of subdivision (a) and the employee cannot promptly and easily determine from the wage statement alone one or more of the following".

relevant to the putative class's claim for rest break violations.")

Labor Code §226(e)(2)(B).

In this action, as set forth above, Defendant fails to keep accurate records of employees' wages earned by not paying meal and rest period wage premiums for the unlawful meal and rest periods. Smidt Dep. 93:21-94:11.  Because such premium payments are deemed as "wages" pursuant to *Murphy* as described above, and because Defendant failed to pay Plaintiff and the putative class such premium wage payments for missed meal breaks, such failure would result in a violation of Labor Code § 226(a).   In other words, Plaintiff's current Labor Code § 226 claim is also predicated upon his meal and rest break claims.  For these reasons Plaintiff believes that class certification is warranted for the Class(es) and/or Sublcass(es).

### 4.    Plaintiff's Unfair Business Practices Claim

Business and Professions Code § 17200 *et seq*. prohibits any unlawful, unfair or fraudulent business act or practice.  Plaintiff's Business and Professions Code claim is predicated upon Defendant's violations of the Labor Code, as set forth above.  Under Business & Professions Code § 17200, adjudication of Defendant's liability is based solely upon a determination as to whether Defendant's employment policies and practices are deceptive, unfair or unlawful. *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  Because this claim is derivative of Plaintiff's Labor Code claims, a finding of predominance so as to warrant certification of any of the Classes and each of the Subclasses alleging these claims likewise supports certification as to the §17200 claim.

### C.    A Class Action Is the Superior Method for Adjudication

Class treatment is clearly superior to any other method of resolving Plaintiff's claims.  *Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 340 (2004).  Because Plaintiff's claims are based on common policies and practices, these claims can be most efficiently litigated on a class-wide basis.  The

alternative would be the unrealistic filing of thousands, or even tens of thousands, of individual claims, posing the serious disadvantages pointed out by the *Sav-On* court.  Because the putative class members are hourly employees, with relatively modest individual claims and limited resources, there is a strong likelihood that individual actions would never be brought.  *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund*, 244 F.3d 1152, 1163 (9th Cir. 2001) (superiority requirement met where class members would recover, at most, about $1,330).  Moreover, many class members might not bring individual actions out of fear of retaliation.[10]   Finally, this action is manageable and well-suited for class certification where Defendant's own payroll records, including dates of employment, paycheck stubs, and timesheets can be used to show the violations and measure damages.

The factors discussed above support a finding of superiority pursuant to Rule 23(b)(3), and there are no factors weighing against it, as class members have no adverse individual interests.

## IV.    A CLASS-WIDE TRIAL IS MANAGEABLE

"The amount of damages is invariably an individual question and does not defeat class action treatment."  *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975).   Here, damages can easily by ascertained through analysis of Defendant's records, without testimony from any class member.  Based on Defendant's payroll data, Plaintiff expects to be able to determine the unpaid meal and rest break premiums solely from a review of class members' time records.  Specifically, it is Plaintiff's position that each and every meal and rest break is non-compliant based on Defendant's own admitted corporate policy.  Thus, for the meal break claim, all that will be required is to count how many work shifts are over 6 hours in length during the class period, and for each such work shift, the respective employee's

---

[10] *See O'Donnell v. TD Ameritrade, Inc.*, 2008 U.S. Dist. LEXIS 49829, at *11 (S.D. Cal. 2008) ("federal courts have widely recognized that fear of retaliation for individual suits against an employer is a justification for class certification in the arena of employment litigation").

hourly rate of pay shall constitute as the unpaid meal break premium.  Similarly, for the rest break claim, all that will be required is to count how many shifts are 3.5 hours or more in length during the class period, and for each such work shift, the respective employee's hourly rate of pay shall constitute as the unpaid rest break premium.

Similarly, with respect to Plaintiff's claim for violation of Labor Code § 226, as that claim is premised upon Plaintiff's meal and rest break claim, and as the penalties for Labor Code § 226 violations are set as $50/$100 per pay period, again, once it is determined that Defendant's meal and rest breaks are invalid or unlawful, Labor Code § 226 penalties can be easily calculated.  For every pay period that an employee works an unlawful meal or rest break work shift, Labor Code § 226's penalty will apply.  Again, there will not be any testimony required from class members.

Indeed, such damages are amenable to summary judgment, where this Court may enter an actual dollar value (plus interest) for each class member.  In addition, there will be some remaining issues for trial, but the vast majority of the damages claimed here are subject to determination from Defendant's records and can be dispositively determined through motion practice.  This is about as ideal a case for post-certification manageability as there can be in the wage and hour context.

## V.    CLASS CERTIFICATION SHOULD BE GRANTED

Based on Defendant's own evidence, namely its written policy regarding the security officer's inability to sleep, nap or rest during the meal and rest breaks, class certification can and should be granted.  *Ortega v. J.B. Hunt Transport, Inc.*, 2012 WL 6708161, *2 (C.D. Cal. 2012) (in denying the defendant's motion for decertification of class, the District Court reiterated that "the *Brinker* court observed that an 'employer may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks'"); *Schulz v. QualxServ, LLC*, 2012 WL 1439066, *4 (S.D. Cal. 2012)

(finding commonality where plaintiffs challenged uniform policies in alleging a failure to provide meal and rest breaks); *Dilts*, 267 F.R.D. 625, 640 (S.D. Cal. 2010) (granting class certification and finding commonality because defendants' "policies were common across [d]efendant's California facilities" and case was subject to common proof, namely whether the "policies deprived the putative class members of meal periods," and "common legal questions, such as [d]efendant's obligations" under the California Labor Code).

For such reasons, this Motion should be granted.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant his motion and certify the Classes and/or Subclasses.

DATED:  March 26, 2013                DIVERSITY LAW GROUP, APC

                                      By:   /S/LARRY W. LEE
                                            Larry W. Lee, Esq.
                                            Attorney for Plaintiff and the class