O

1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        CENTRAL DISTRICT OF CALIFORNIA

10

11   GREGORY DYNABURSKY, as an            CASE NO. 8:12-cv-2210-JLS (RNBx)
     individual and on behalf of all others
12   similarly situated,

13              Plaintiffs,

14                                        **ORDER GRANTING PLAINTIFF'S
                                          MOTION FOR CLASS
15         vs.                            CERTIFICATION**

16
     ALLIEDBARTON SECURITY SERVICES
17   LP, ET AL.,

18              Defendant.

19

20

21

22

23

24

25

26

27

28

1   Plaintiff Gregory Dynabursky filed his Complaint on December 21, 2012,

2   asserting claims for violations of the California Labor Code and California

3   Business & Professions Code section 17200.  (Compl., Doc. 1.)  On March 26,

4   2013, Plaintiff filed a Motion for Class Certification.  (Mot., Doc. 18.)  Defendant

5   AlliedBarton Security Services LP opposed,[1] and Plaintiff replied.  (Opp'n, Doc.

6   26; Reply, Doc. 29.)  Plaintiff and Defendant filed supplemental briefing

7   following the Ninth Circuit Court of Appeals' decision in *Abdullah v. U.S.*

8   *Security Associates, Inc*., 731 F.3d 952 (9th Cir. 2013).  (Suppl. Br., Doc. 63;

9   Suppl. Opp'n, Doc. 66.)

10   Having read the papers, reviewed the admissible evidence, heard oral

11   argument, and taken the matter under submission, the Court GRANTS Plaintiff's

12   Motion for Class Certification.

13

14   **I.     BACKGROUND**

15   Defendant provides security services nationwide, and Defendant formerly

16   employed Plaintiff in California as a security officer.  (Gregory Dynabursky Decl.

17   ¶ 1, Doc. 19-2.)  Defendant employed approximately 15,600 security officers in

18   total in California during the class period.  (Larry Lee Decl. Ex. D at 3, Doc. 20.)

19   Plaintiff contends that Defendant has a nationwide, written policy prohibiting its

20   security officers from, *inter alia*, "sleeping or dozing" while on meal or rest

21   breaks.  (Mem. P. & A. at 1, Doc. 19.)  This rule is codified in Defendant's

22   Security Officer Handbook ("Handbook"), which is given to Defendant's security

23

24   _____

25

26   [1] While AlliedBarton Security Services LLC is also a defendant in this case and signed
the Opposition, Plaintiff made clear in his Motion that he is only moving to certify

27   against AlliedBarton Security Services LP.  (Mem. P. & A. at 1 n.1.)  Thus, this Order
will refer only to AlliedBarton Security Services LP as "Defendant."

28

officer employees.  (Smidt Dep. 45:1-5, Ex. 4 at 13-14, Ex. 10 at 13-14 (Lee Decl. Ex. A).)

After an employee is offered and accepts employment as a security officer, the employee goes through a training course called Security Officer Basic Course ("SOBC").  (*Id*. at 41:17-42:11.)  New employees are given the Handbook during the SOBC.  (*Id.* at 45:1-5.)  Moreover, each employee is required to acknowledge and sign a "Receipt of Employee Handbook," which provides in part: "As a condition of my employment, I agree to abide by the rules and regulations contained therein."  (*Id*. Ex. 4 at 37, Ex. 10 at 37.)  The Handbook also provides that it is a "guide for national use" and "for some topics, state regulations may supersede information contained in this Handbook."  (*Id*. Ex. 4 (DEF00100), Ex. 10 (DEF00246).)

During the SOBC, new employees are also presented with the On Duty Meal Period Agreement.  (*Id*. at 44:9-12, Exs. 6, 7.)  Defendant characterizes this agreement as voluntary, and estimates that a majority of its security officers have signed the On Duty Meal Period Agreement.  (*Id*. at 55:2-9; Opp'n at 4.)

According to Defendant, "approximately[] a little greater than 50%" of Defendant's security officer postings require the security officer to be "on-duty" during his or her meal period.  (Smidt Dep. at 80:10-18.)  Only security officers who have signed the On Duty Meal Period Agreement are assigned to such postings.  Defendant argues that security officers holding these postings cannot be relieved of all their duties during breaks and therefore remain "on-duty" during such times.  (Opp'n at 4-5.)  According to Defendant's written policy, security officers who take off-duty meal breaks clock out at the start of the meal break and then clock in at its conclusion.  (Smidt Dep. Ex. 4 at 27, Ex. 10 at 27-28.)

Plaintiff claims that he was required to sign the On Duty Meal Period Agreement and had to work shifts requiring him to take on-duty meal breaks.

1  (Dynabursky Decl. ¶¶ 3-6.)[2]  These breaks were not duty-free; rather, Plaintiff

2  allegedly had to keep his communication radio in operation, respond to any calls,

3  and was not allowed to sleep or nap.  (*Id.*)  Plaintiff states that Defendant told him

4  this was a company-wide policy.  (*Id.* ¶ 4.)

5       Plaintiff contends that Defendant's company-wide policy precluding

6  security officers from taking any "unfettered off-duty meal and rest breaks"

7  violates California Labor Code section 226.7 and California Industrial Welfare

8  Commission ("IWC") Wage Order No. 4 sections 11 and 12.  (Mem. P & A. at 7.)

9  On that basis, Plaintiff seeks certification of the following classes  ("Proposed

10  Classes"):[3]

11

12       Subclass (a) [Meal Break Subclass 1]
         All of Defendant's past and present California employees who

13       worked more than 6 hours in any "on-duty meal break" work shift as
         a Security Officer from December 21, 2008 through the present.

14

15       Subclass (b) [Meal Break Subclass 2]
         All of Defendant's past and present California employees who worked

16       more than 6 hours in any "on-duty meal break" work shift as a Security
         Officer from December 21, 2008 through the present who received

17       itemized wage statements.

18

19       Class 2 [Rest Break Class]
    _____

20  [2] Defendant's objections to these paragraphs in the declaration on the grounds of hearsay

21  and lack of foundation are overruled.  (*See* Doc. 26-1.)  The statements described in the
    paragraphs are party admissions.  Plaintiff has established a foundation for these

22  paragraphs as he was an employee of Defendant and attended the SOBC.
    [3] Plaintiff originally sought certification of a meal break class ("Class 1"), but withdrew

23  its request for certification of that class in its supplemental briefing.  (Suppl. Br. at 1.)

24  Class 1 was defined as:

25       [A]ll of Defendant's past and present California employees who worked
         more than 6 hours in any work shift as a Security Officer from December

26       21, 2008 through the present.

27  (Mem. P. & A. at 8.)  Accordingly, Class 1 is not included in the Proposed Classes.

28

                                          4

All of Defendant's past and present California employees who worked 3.5 hours or more in any work shift as a Security Officer from December 21, 2008 through the present.

Subclass (c) [Rest Break Subclass]
All of Defendant's past and present California employees who worked 3.5 hours or more in any work shift as a Security Officer from December 21, 2008 through the present who received itemized wage statements.

(Notice of Mot. at 3-4; Mem. P. & A. at 8.)

## II.    ASCERTAINABILITY

"Before a class may be certified, it is axiomatic that such a class must be ascertainable." *Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554, 557 (C.D. Cal. 2012) (quoting *Peel v. BrooksAmerica Mortg. Corp.*, No. 8:11-cv-0079-JST (RNBx), 2012 WL 3808591, at *2 (C.D. Cal. Aug. 30, 2012)).

With respect to Subclasses (a) and (b), timekeeping records indicate whether an employee worked more than 6 hours in any shift during the relevant time period.  (Hudson Dep. 22:18-24:20, Doc. 63-1.)  These records show whether an employee recorded an off-duty meal break, and employees are required to record such breaks pursuant to Defendant's written policy.  (Hudson Dep. 48:14-50:7; Smidt Dep. 73:6-8, Ex. 4 at 27, Ex. 10 at 27-28.)  Accordingly, the subclasses can be ascertained by determining which employees did not record such breaks.  *See Abdullah*, 731 F.3d at 966 (noting with approval district court's finding that "given [defendant's] admission that those staffed at single guard posts were required to take on-duty meals, [d]efendant's records of each employee's clock-in and clock-out times, how much he was paid, and whether he was staffed at a single guard post, can be used to extrapolate whether his meal break was on- or off-duty.").

1    With respect to Class 2 and Subclass (c), a search of Defendant's

2    timekeeping records will similarly reveal whether a putative class member has

3    worked more than 3.5 hours in any shift during the relevant time period.

4    Accordingly, this class and subclass are also ascertainable.

5

6    **III.   CERTIFICATION UNDER RULE 23**

7         **A.   Legal Standard for Class Actions under Rule 23**

8         "A party seeking class certification must satisfy the requirements of

9    Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the

10   categories under Rule 23(b)."  *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538,

11   542 (9th Cir. 2013).  Rule 23(a) "requires a party seeking class certification to

12   satisfy four requirements: numerosity, commonality, typicality, and adequacy of

13   representation."  *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, --- U.S. ---, 131 S.Ct.

14   2541 (2011)).  Rule 23(a) provides:

15
16        One or more members of a class may sue or be sued as
          representative parties on behalf of all members only if:

17
18        (1) the class is so numerous that joinder of all members is
          impracticable;

19        (2) there are questions of law or fact common to the class;

20
21        (3) the claims or defenses of the representative parties are typical of
          the claims or defenses of the class; and

22
23        (4) the representative parties will fairly and adequately protect the
          interests of the class.

24   Fed. R. Civ. P. 23(a).

25        "Rule 23 does not set forth a mere pleading standard.  A party seeking class

26   certification must affirmatively demonstrate his compliance with the Rule—that

27   is, he must be prepared to prove that there are *in fact* sufficiently numerous

28

1  parties, common questions of law or fact, etc." *Dukes*, 131 S. Ct. at 2551.  This

2  requires a district court to conduct a "rigorous analysis" that frequently "will

3  entail some overlap with the merits of the plaintiff's underlying claim." *Id.*

4        "Second, the proposed class must satisfy at least one of the three

5  requirements listed in Rule 23(b)." *Id.* at 2548.  Here, Plaintiff seeks certification

6  of the class under Rule 23(b)(3), which permits maintenance of a class action if

7  "the court finds that the questions of law or fact common to class members

8  predominate over any questions affecting only individual members, and that a

9  class action is superior to other available methods for fairly and efficiently

10  adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

11

12        **B.        The Proposed Classes Meet All Rule 23(a) Requirements**

13               **1.        Numerosity**

14        Rule 23(a)(1) requires that the class be "so numerous that joinder of all

15  members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The undisputed evidence

16  reveals that Defendant employed thousands of security officers in California

17  during the class period.  (Lee Decl. Ex. D at 3.)  Numerosity is plainly met for

18  each of the Proposed Classes.[4]

19

20               **2.        Commonality**

21        Rule 23(a)(2) requires that "there are questions of law or fact common to

22  the class."  Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to

23  demonstrate that the class members have suffered the same injury."  *Dukes*, 131 S.

24  Ct. at 2551 (internal quotation marks and citation omitted).  The plaintiff must

25  _____

26  [4] Although the meal break subclasses are limited to employees working at on-duty meal
    break posts, more than half of all posts are on-duty meal break-posts, and accordingly
27  numerosity is clearly met as to these subclasses as well.

28

1  allege that the class's injuries "depend upon a common contention" that is

2  "capable of classwide resolution."  *Id.*  In other words, the "determination of [the

3  common contention's] truth or falsity will resolve an issue that is central to the

4  validity of each one of the claims in one stroke."  *Id.*  "What matters to class

5  certification . . . is not the raising of common questions—even in droves—but,

6  rather the capacity of a classwide proceeding to generate common *answers* apt to

7  drive the resolution of the litigation."  *Id.* (internal quotation marks and citation

8  omitted).

9         **a.**    **Subclasses (a) and (b) – Meal Break Subclasses**

10          The Court ordered supplemental briefing on class certification in light of

11  the Ninth Circuit's decision in *Abdullah v. U.S. Security Associates*, 731 F.3d 952

12  (9th Cir. 2013).  (*See* Docs. 53, 62.)  As the Court's determination of commonality

13  for Subclasses (a) and (b) is guided in part by *Abdullah*, the Court first reviews the

14  Ninth Circuit's holding and interpretation of relevant law.  The Court then

15  addresses commonality with respect to these subclasses.

16

17         **i.**    ***Abdullah v. U.S. Security Associates***

18          In *Abdullah*, the Ninth Circuit affirmed certification of a class of security

19  officers who took on-duty meal breaks, based on the defendant's decision to staff

20  security posts with one guard each.  *Id*. at 957-58, 967.  Before affirming

21  certification, the Ninth Circuit provided an overview of the law regarding on-duty

22  meal breaks, which the Court briefly reviews below.

23          Under California law, certain employees are guaranteed a thirty minute

24  meal period for every five hours of work.  *See id.* at 958 (citing 8 Cal. Code Regs.

25  § 11040 ("Wage Order No. 2001-4"), subd. 11(A)).  Such employees must be

26  "relieved of all work" during this break, unless the "nature of the work prevents

27  an employee from being relieved of all duty and when by written agreement

28

1  between the parties an on-the-job paid meal period is agreed to." *See id.* (quoting

2  Wage Order No. 2001-4, subd. 11(A)).  For guidance on the exception, the

3  *Abdullah* Court looked to California Division of Labor Standards and

4  Enforcement ("DLSE") opinion letters, which state that the exception is a "limited

5  alternative" that must be "narrowly construed," and that "the employer has the

6  burden to establish the facts that would justify an on-duty meal period."  *See id.* at

7  959 (quoting DLSE Op. Letter 2009.06.09 at 7; DLSE Op. Letter 2002.09.04 at

8  2).  The exception may not apply "where the employer may have another qualified

9  representative reasonably available to perform the attending duties . . . ."  *See id.*

10  at 960 (quoting DLSE Op. Letter 2009.06.09).  The Ninth Circuit noted two

11  general categories where the exception may apply: where the work has some

12  particular, external force that requires the employee to be on duty at all times, and

13  where the employee is the sole employee of a particular employer.[5]  *Id.* at 959.

14       The *Abdullah* Court also discussed decisions by California courts on

15  liability under California's wage and hour laws.  In particular, the Ninth Circuit

16  quoted from a California Supreme Court decision that held in part that "*if, for*

17  *example, [an employer] adopts a uniform policy authorizing and permitting only*

18  *one rest break for employees working a seven-hour shift when two are required—*

19  *it has violated the wage order and is liable.*"  *Brinker Restaurant Corp. v.*

20  *Superior Court*, 139 Cal. Rptr. 3d 315, 273 P.3d 513, 531-32 (2012) (emphasis

21  added in *Abdullah*); *see Abdullah*, 731 F.3d at 961.  The Ninth Circuit additionally

22  quoted from a California Court of Appeal decision that relied on *Brinker* to certify

23  an on-duty meal break class:  "*Brinker* leads us . . . to conclude [defendant] would

24  _____

25

26  [5] The Ninth Circuit explicitly did not limit the exception to these general categories,
    instead noting that it made the "observation solely to note the broad types of positions
27  that DLSE has determined qualify for the 'nature of the work' exception, as part of our
    limited inquiry into the merits of the plaintiffs' claims."  *Id.* at 959 n.12.

28

1  be liable upon a determination that [defendant's] uniform on-duty meal break

2  policy was unlawful . . . . *[T]he employer's liability arises by adopting a uniform*

3  *policy that violates the wage and hour laws.* Whether or not the employee was

4  able to take the required break goes to damages . . . ." *Faulkinbury v. Boyd &*

5  *Assocs., Inc.*, 216 Cal. App. 4th 220, 156 Cal. Rptr. 3d 632, 643 (2013) (emphasis

6  and alterations added in *Abdullah*); *see Abdullah*, 731 F.3d at 961-62.

7        The Ninth Circuit then discussed whether certification of the class before it

8  was proper.  Although the defendant had argued that the duties of its security

9  officers and the characteristics of the worksites varied, the Ninth Circuit held that

10  the differences were not relevant, as the reason the security officers were

11  prevented from taking an on-duty meal break was the defendant's decision to staff

12  only one guard at each post.  *Abdullah*, 731 F.3d at 963-64.

13

14                          **ii.       Present Action**

15        Plaintiff argues that certification of Subclasses (a) and (b) is proper in light

16  of *Abdullah*.  In particular, Plaintiff argues that, based on Defendant's size and the

17  general similarity across security officers' duties, Defendant can provide security

18  officers to give relief to other security officers and allow them to take off-duty

19  meal breaks.  (Suppl. Br. at 4-5.)  Thus, according to Plaintiff, "the crux of the

20  issue, as in the *Abdullah* case, is Defendant's decision to staff its sites as 'on-duty

21  meal period' sites and whether such a staffing decision is lawful when there are

22  other workers available to provide relief."  (*Id.* at 5.)

23        Defendant argues that certification of these subclasses is improper because

24  it does not uniformly require on-duty meal breaks and "the nature of work

25  performed by [security officers] in this case varies widely from site to site, post to

26  post, and shift to shift."  (Opp'n at 14-16, 18-19; Suppl. Opp'n at 2-3, 7-8.)

27

28

1  Defendant purports to make its own inquiry as to whether it believes a given post
2  requires an on-duty meal break.  (Opp'n at 15; Suppl. Opp'n at 3.)

3       The Court finds that the variations in worksites and duties cited by
4  Defendants do not defeat certification of the meal break subclasses.  Based on the
5  fact that Defendant employs thousands of security officers in California, an issue
6  susceptible to classwide resolution is whether the nature of Defendant's
7  operations would have allowed it to provide security officers to relieve the
8  members of Subclasses (a) and (b) during their on-duty meal breaks, despite the
9  purported differences in duties and worksites.

10      The evidence submitted by Defendant does not persuade the Court
11  otherwise.[6]  First, the various duties Defendant identifies do not clearly prevent a
12  security officer from taking an off-duty meal break or prevent Defendant from
13  providing relief workers.  Defendant provides a declaration and deposition
14  testimony noting distinctions between manning a check-in desk, checking fire
15  extinguishers, and escorting guests or janitors, as well as distinctions between foot
16  patrols, bicycle patrols, and other types of patrols.  (Michael Smidt Decl. ¶¶ 5-6,
17  Doc. 26-4.)  Defendant also notes that some duties and posts require the security
18  officer to have certifications (such as CPR/AED), training (such as weapons
19  training), or a security clearance, while other posts do not.  (Suppl Opp'n at 3;
20  Smidt Decl. ¶ 12; Smidt. Dep. at 100:22-112:19.)  In *Abdullah*, officers' duties
21  included "patrolling . . .; checking receipts; signing in and out trucks; setting up
22  school parking lots and assisting with student drop-offs and pick-ups; inspecting
23  vehicles; restraining unruly patients; escorting dead bodies; checking . . . trucks;
24  [catching] shoplifters; monitoring psychiatric patients; checking in employees and

25  _____

26  [6] Plaintiff made numerous objections to the evidence provided by Defendant.  As the
27  Court finds that class certification should be granted even if Defendant's evidence were
    considered admissible, the Court does not rule on Plaintiff's objections.

28

answering phones at a front desk; performing surveillance; and enforcing hotel quiet hours."  731 F.3d at 963.  The Ninth Circuit noted that "[t]hese duties are undoubtedly distinct from one another, but the only reason any of them 'prevent' the employee from taking a meal period is because USSA has chosen to adopt a single-guard staffing model."  *Id*.  Here, the duties of security officers likewise vary, but Defendant does not convincingly demonstrate how any of them would necessarily prevent a security officer from taking an off-duty meal break.

Second, none of the variations in sites identified by Defendant convincingly demonstrate that security officers would be prevented from taking an off-duty meal break.  Defendant broadly asserts that sites include:

> banks, high rise office buildings, warehouses, hospitals, manufacturing plants, laboratories, construction sites, condominium buildings, gated housing developments, stand-alone stores, strip malls, large enclosed malls, corporate campuses, oil refineries, entertainment studio lots, port facilities, defense contractors, trucking facilities, chemical plants, public transportation terminals, high schools, colleges, museums, and government buildings.

(Opp'n at 2 (citing Smidt. Dep. 138:24-140:5); Smidt. Decl. ¶ 2.)[7]  The sites in *Abdullah* similarly included a variety of locations such as "hotels, hospitals, warehouses, and construction sites," 731 F.3d at 954, and it is not clear why a

---

[7] Defendant's most knowledgeable witness further stated that the sites range from "stand alone store[s]" to "sprawling complexes," and that "posts at a single client site can be as close together as 20 feet or as far apart as a mile."  (Smidt. Decl. ¶ 4.)

security officer could not reasonably be made available to relieve another security officer at the various sites identified by Defendant.

Defendant emphasizes that the DLSE "holds out 'security guards stationed at remote sites' as an example of employees whose work qualifies for an on-duty meal period," and argues that it considers whether a site or post is "remote" when making its own determinations regarding the "nature of the work" exception. (Opp'n at 14-15.) However, Defendant does not identify any specific examples of "remote" posts or sites in its briefing, nor has the Court found any such sites described in the numerous declarations provided by Defendant's on-duty meal break security officers. Instead, consistent with the general description of the sites discussed above, these declarations typically describe posts at sites such as malls, corporate campuses, and gated communities.

Defendant has not convincingly shown how any of the various duties or worksites necessarily prevent the security officers at those sites from taking an off-duty meal break, particularly in light of Defendant's size. Accordingly, the Court finds that there exists an issue capable of common resolution—namely, whether the nature of Defendant's operations would have allowed it to provide security officers to relieve the members of Subclasses (a) and (b) during their on-duty meal breaks. *See Abdullah*, 731 F.3d at 962.

### b.    Class 2 – Rest Break Class

Plaintiff also seeks certification of Class 2, a rest break class. Plaintiff asserts two theories in support of this proposed class. First, Plaintiff alleges that Defendant's no-sleeping policy violates the Wage Order because it prohibits employees from sleeping during their rest break. Second, Plaintiff alleges that Defendant has a policy of requiring employees to carry their radios or other communication devices and remain "on call" during rest breaks. The Court finds

13

1     that the first theory supports certification of Class 2, but the second theory does

2     not.  The Court considers each theory in turn.

3

4               **i.**         **"No Sleeping or Dozing" Policy**

5         Individualized issues and defenses do not preclude certification of Class 2

6     based on the "no sleeping or dozing" policy.  In the rest break context,

7     Defendant's policy is not subject to an exception or waiver.  As a panel of the

8     California Court of Appeal recently noted:

9

10             There does not appear to be an on-duty rest break exception as there
              is for meal breaks.  The California Department of Industrial

11             Relations, Division of Labor Standards Enforcement (DLSE), is
              empowered to enforce California's labor laws, including IWC wage

12             orders.  A DLSE opinion letter, dated February 22, 2002, states,
              "there must be a net 10 minutes of rest provided in each 'work

13             period' and the rest period must be, as the language [of Wage Order
              No. 4–2001] implies, duty-free."

14

15     *Faulkinbury*, 216 Cal. App. 4th at 236-37 (emphasis omitted); *see also Bufil v.*

16     *Fin. Grp, Inc.*, 162 Cal. App. 4th 1193, 1205, 76 Cal. Rptr.3d 804 (2008) ("The

17     permitted waiver of the meal requirement applies only to meal periods, not to rest

18     breaks.").

19         Thus, Defendant's uniform policy prohibiting sleeping or dozing on rest

20     breaks is subject to classwide treatment, as the determination of the validity of

21     that policy "will resolve an issue that is central to the validity of each one of the

22     claims in one stroke."  *Dukes*, 131 S. Ct. at 2551 (internal quotation marks and

23     citation omitted).

24         Defendant's arguments to the contrary are unpersuasive.  First, Defendant

25     argues that such a policy, even if it had one, would not be illegal.  (Opp'n at 20.)

26     However, that presents a question on the merits that the Court need not answer at

27     this stage.  *See Negrete v. Allianz Life Ins. Co. of N. Am.*, 287 F.R.D. 590, 613

28

1   (C.D. Cal. 2012) ("it is not the Court's role on a motion for certification to

2   conclusively weigh or decide the merits of plaintiffs' theories, but instead to

3   determine whether such theories could prove causation on a class-wide basis at

4   trial").  Rather, that argument should be raised at summary judgment or trial.

5          Second, Defendant argues that "there is no such prohibition uniformly or

6   consistently applied to the 15,000-member putative class."  (Opp'n at 21.)  The

7   Court does not find Defendant's argument or the evidence in support of the

8   argument persuasive.  Defendant cites a handful of declarations by currently-

9   employed supervisors testifying as to a practice currently being litigated.  Their

10  testimony, even if credible, is not necessarily representative of the hundreds of

11  sites at issue.  *See Avilez v. Pinkerton Gov't Servs*., 286 F.R.D. 450, 458-59 (C.D.

12  Cal. 2012).  Even if the evidence in support of the argument were credible, the

13  argument misses the mark, as Plaintiff's theory of the case is that the *policy* itself

14  is invalid, not that it is in fact administered or enforced classwide.  *Cf. Brinker*,

15  139 Cal. Rptr. 3d at 337 ("An employer is required to authorize and permit the

16  amount of rest break time called for under the wage order for its industry. If it

17  does not—if, for example, it adopts a uniform policy authorizing and permitting

18  only one rest break for employees working a seven-hour shift when two are

19  required—it has violated the wage order and is liable."); *Faulkinbury*, 156 Cal.

20  Rptr. 3d at 643 ("In other words, the employer's liability arises by adopting a

21  uniform policy that violates the wage and hour laws. Whether or not the employee

22  was able to take the required break goes to damages . . . .").[8]

23         Accordingly, commonality supports certification of the rest break claim, to

24  the extent it is based on the "no sleeping or dozing" policy.

25  _____

26  [8] Although these cases analyzed class certification under California Code of Civil
    Procedure section 382, their analysis of liability nonetheless informs the Court's inquiry.
27  *See Abdullah*, 731 F.3d at 961.

28

1

2

### ii.     Required Use of Communication Devices

3      Plaintiff also asserts that "*certain* sites require officers to keep

4 communication devices on them during rest breaks and that they are subject to call

5 back during their rest breaks."  (Mem. P. & A. at 19 (emphasis added) (citing

6 Smidt Dep. 114:8-116:13).)  However, Plaintiff does not have classwide proof; at

7 best, this is site-specific proof.  This theory does not support certification.

8

9             **c.     Wage Statements Claim (Subclass (c))**

10     Plaintiff's claim for failure to provide accurate wage statements under

11 Labor Code section 226 is derivative of his meal and rest break claims.[9]  (Mem. P.

12 & A. at 22.)  Indeed, in opposing certification of this claim, Defendant merely

13 incorporates its arguments against certifying the meal and rest break claims.

14 (Opp'n at 23.)

15     Accordingly, commonality supports certification of the wage statement

16 claim, as derivative of the meal and rest break claims.

17

18             **d.     California Business & Professions Code Section**
19                      **17200 Claim**

20     Lastly, Plaintiff seeks certification of his claim under California Business

21 & Professions Code section 17200, et seq., which prohibits "any unlawful, unfair

22 or fraudulent business act or practice . . ."  Cal. Bus. & Prof. Code § 17200.  "By

23 proscribing 'any unlawful' business practice, section 17200 borrows violations of

24 other laws and treats them as unlawful practices that the unfair competition law

25 makes independently actionable."  *Cel-Tech Commc'ns, Inc. v. Los Angeles*

26 _____

27 [9] Labor Code section 226(a) requires an employer to furnish "accurate itemized" wage
statements.  Labor Code § 226(a).

28

1   *Cellular Tel. Co.*, 20 Cal. 4th 163, 180, 83 Cal. Rptr.2d 548 (1999) (internal

2   citations and quotation marks omitted).  Plaintiff's section 17200 claim is

3   derivative of his Labor Code claims.  (Mem. P. & A. at 22.)

4        Accordingly, commonality supports certification of the section 17200

5   claim, as derivative of Plaintiff's meal break, rest break and wage statement

6   claims.

7

8             **3.**       **Typicality**

9        Rule 23(a)(3) requires "the claims or defenses of the representative parties

10  [to be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).

11  "The typicality requirement looks to whether the claims of the class

12  representatives [are] typical of those of the class, and [is] satisfied when each

13  class member's claim arises from the same course of events, and each class

14  member makes similar legal arguments to prove the defendant's liability."

15  *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011) (internal

16  citation and quotation marks omitted).

17       Plaintiff's claims are typical of the putative class members.  The meal

18  break subclasses consist of all of Defendant's California security officers who

19  worked more than 6 hours in any "on-duty meal break" work shift within the class

20  period, and, for one subclass, received itemized wage statements.  Plaintiff signed

21  the On Duty Meal Period Agreement and worked shifts requiring him to take on-

22  duty meal breaks.  (Dynabursky Decl. ¶ 6, Doc. 19-2.)  The rest break class

23  consists of all of Defendant's California security officers, including Plaintiff.

24       Defendant contends that the evidence reflects that Plaintiff was a "shift

25  supervisor," not a security officer, but there is no evidence that Plaintiff did not

26  take on-duty meal breaks or was not subject to the policy at issue.  Indeed, the

27  evidence shows that Plaintiff was bound by the policy set forth in the Handbook.

28

(Dynabursky Decl. ¶ 7, Doc. 19-2; *id.* Ex. A (Dynabursky's signed "Receipt of Employee Handbook").)

### 4.    Adequacy

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

First, the Court considers whether Plaintiff has any conflicts with the Proposed Classes.  Plaintiff's claims appear to be virtually co-extensive with the class members; the Court therefore concludes that Plaintiffs "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).

Second, as to the adequacy of Plaintiff's counsel, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).  Here, the declarations of putative class counsel disclose sufficient class-action experience.   (*See* Dennis S. Hyun Decl. ¶¶ 5-7, Doc. 19-1; Edward W. Choi Decl. ¶ 5, Doc. 19-3; Larry W. Lee Decl. ¶¶ 5-7, Doc. 20.)  Defendant does not challenge Plaintiff's counsel's adequacy.  The Court concludes that Plaintiff's counsel is adequate.

### C.      The Proposed Classes Meet the Rule 23(b) Requirements

In addition to establishing the elements of Rule 23(a), Plaintiff must also satisfy one of the three subsections of Rule 23(b).  Fed. R. Civ. P. 23(b).  Plaintiff seeks certification under Rule 23(b)(3).  (Mem. P. & A. at 12.)  For the reasons set forth below, the Court holds that certification of the Proposed Classes is appropriate under Rule 23(b)(3).

Under Rule 23(b)(3), a class action may be maintained if: "[1] the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and [2] that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. R. 23(b)(3) (emphases added).  When examining a class that seeks certification under Rule 23(b)(3), the Court may consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id*.  The Court finds that Plaintiff's Proposed Classes satisfy both the predominance and superiority requirements.

### a.      Predominance

"[T]he predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by

representation." *Abdullah*, 731 F.3d at 964 (citations and internal quotation marks omitted).  "Rule 23(b)(3) requires [only] a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."  *Id.* (alterations in original).

### i.       Subclasses (a) and (b)

As discussed above, common issues predominate in the litigation of the claims for Subclasses (a) and (b).  All of the security officers in these subclasses worked on-duty meal breaks, and the Court finds that its analysis of the "nature of the work" exception with respect to Rule 23(a) compels the conclusion that Rule 23(b)(3) is satisfied.  *See id.* at 964.  As Defendant has not demonstrated any relevant distinctions between the worksites, the "nature of the work" inquiry will be a common one focused on Defendant's ability to provide relief workers based on the nature of Defendant's operations.  Accordingly, the Court does not find that individual issues will predominate.

### ii.      Class 2 and Subclass C

Common issues also predominate in the litigation of the Class 2 claims.  Because the inquiry will be limited to the validity of Defendant's no-sleeping-or-dozing-while-on-rest-breaks policy, the trial will not require, as part of  the classwide proof, a determination of whether the policy was actually enforced against any or all class members, or whether certain class members were in fact permitted to sleep or doze.  Thus, predominance is satisfied.  *Cf. In re AutoZone Inc., Wage & Hour Employment Practices Litig.*, 289 F.R.D. 526, 534  (N.D. Cal. Dec. 21, 2012) (certifying class based on written, uniform rest break policy).

Because the wage-statement claim is derivative of Plaintiff's rest-break claim, predominance is also satisfied as to Subclass (c).

1

2  **b.**   **Superiority**

3        The Court further finds that a class action would be a superior method of

4  adjudicating Plaintiff's claims for each of the Proposed Classes.  "The superiority

5  inquiry under Rule 23(b)(3) requires determination of whether the objectives of

6  the particular class action procedure will be achieved in the particular case."

7  *Hanlon*, 150 F.3d at 1023.  "This determination necessarily involves a

8  comparative evaluation of alternative mechanisms of dispute resolution."  *Id.*

9  Here, each member of the class pursuing a claim individually would burden the

10  judicial system and run afoul of Rule 23's focus on efficiency and judicial

11  economy.  *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th

12  Cir. 2009) ("The overarching focus remains whether trial by class representation

13  would further the goals of efficiency and judicial economy.").  Further, litigation

14  costs would likely exceed potential recovery if each class member litigated

15  individually.  "Where recovery on an individual basis would be dwarfed by the

16  cost of litigating on an individual basis, this factor weighs in favor of class

17  certification."  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175

18  (9th Cir. 2010) (citations omitted).

19        Considering the non-exclusive factors under Rule 23(b)(3)(A)-(D), the

20  Court finds that class members' potential interests in individually controlling the

21  prosecution of separate actions and the potential difficulties in managing the class

22  action do not outweigh the desirability of concentrating this matter in one

23  litigation.  *See* Fed. R. Civ. P. 23(b)(3)(A), (C), (D).  While the Court is aware of

24  similar litigation pending in state court, this fact alone does not militate against

25

26

27

28

1  superiority.[10]  *See In re AutoZone*, 289 F.R.D. at 535-36 (concluding that that

2  classwide adjudication of potentially unlawful rest break policy was superior

3  method).  Therefore, the Court finds that the Proposed Classes may be certified

4  under Rule 23(b)(3).

5

6          **D.     Rule 23(g) – Appointment of Class Counsel**

7          Under Rule 23(g), "a court that certifies a class must appoint class

8  counsel."  Fed. R. Civ. P. 23(g)(1).  As previously stated in this Order, the Court

9  is satisfied that Plaintiff's counsel is adequate and thus may be appointed as Class

10  Counsel in this case.

11

12  **IV.   CONCLUSION**

13          For the reasons set forth above, the Court GRANTS Plaintiff's Motion for

14  Class Certification as set forth below.

15

16          (1) The following Rule 23(b)(3) class and subclass are CERTIFIED under

17          the California Labor Code § 226.7; California Labor Code § 226; and

18          California Business & Professions Code § 17200, et seq.:

19

20                  Subclass (a) [Meal Break Subclass]

21                  All of Defendant's past and present California employees

22                  who worked more than 6 hours in any "on-duty meal break"

23                  work shift as a Security Officer from December 21, 2008

24                  through the present.

25  _____

26  [10]  The state court action has not yet reached the class certification stage, and a motion to

27  stay is pending.  *See Janata v. AlliedBarton Security Services, LLC*, San Diego Superior
    Court Case No. 37-2013-00030693.

28

                                    22

1

2          Subclass (b) [Meal Break Subclass]

3          All of Defendant's past and present California employees

4          who worked more than 6 hours in any "on-duty meal break"

5          work shift as a Security Officer from December 21, 2008

6          through the present who received itemized wage statements.

7

8          Class 2 [Rest Break Class]

9          All of Defendant's past and present California employees

10         who worked 3.5 hours or more in any work shift as a Security

11         Officer from December 21, 2008 through the present.

12

13         Subclass (c) [Rest Break Subclass]

14         All of Defendant's past and present California employees

15         who worked 3.5 hours or more in any work shift as a Security

16         Officer from December 21, 2008 through the present who

17         received itemized wage statements.

18
19   (2) Plaintiff Gregory Dynabursky is APPOINTED as class representative.

20
21   (3) Larry W. Lee, Esq.; Dennis S. Hyun, Esq.; and Edward W. Choi, Esq.

22   are APPOINTED as class counsel.

23
24   (4) The Court directs the parties to meet and confer, and to submit an

25   agreed-upon form of class notice that will advise class members of, among

26   other things, the relief sought and their rights to intervene, opt-out, submit

27   comments, and contact class counsel.  The parties shall also jointly submit

28   a plan for dissemination of the proposed notice.  The parties shall work

together to generate a class list to be used in disseminating class notice. The parties are advised to review the Federal Judicial Center's checklist for class action notices, available at www.fjc.gov, before drafting the proposed notice and plan of dissemination.  The proposed notice and plan of dissemination, along with a proposed order approving or denying the parties' proposal, shall be filed with the Court on or before **March 31, 2014**.

DATED: January 29, 2014                       JOSEPHINE L. STATON
_____
HONORABLE JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE