1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                    CENTRAL DISTRICT OF CALIFORNIA
10
11  GREGORY DYNABURSKY, as an          CASE NO. SACV 12-2210-JLS (RNBx)
    individual and on behalf of all others
12  similarly situated,
13                                      **ORDER GRANTING PLAINTIFFS'**
                Plaintiff,              **UNOPPOSED MOTION FOR**
14                                      **PRELIMINARY APPROVAL OF**
                                        **CLASS ACTION SETTLEMENT (Doc.**
15          vs.                         **115) AND SETTING A FINAL**
                                        **FAIRNESS HEARING DATE FOR**
16                                      **AUGUST 12, 2016, AT 2:30 P.M.**
    ALLIEDBARTON SECURITY
17  SERVICES, LP and ALLIEDBARTON
    SECURITY SERVICES, LLC; and DOES 1
18  through 50, inclusive;
19
                Defendants.
20
21
22
23
24
25
26
27
28

Before the Court is an Unopposed Motion filed by Plaintiff Gregory Dynabursky seeking preliminary approval of a proposed class action settlement of wage and hour claims.  (Mot., Doc. 115.)  Dynabursky asks the Court to (1) preliminarily approve the terms of the class action settlement; (2) certify the proposed class for settlement purposes only; (3) appoint Dynabursky, Mikhail Babeshkov, and Jose Aguirre as Class Representatives; (4) appoint as Class Counsel Larry W. Lee and Nick Rosenthal of Diversity Law Group, P.C., Edward W. Choi of Law Office of Choi & Associates, Dennis S. Hyun of Hyun Legal, APC, James R. Hawkins of James Hawkins, APLC, Matthew S. Dente of Dente Law, PC, and Brian J. Robbins and Diane E. Richard of Robbins Arroyo LLP; (5) approve Rust Consulting as the settlement administrator; (6) approve the form and manner of class notice; and (7) schedule a final fairness hearing date.  (*See* Notice of Mot. at i-ii, Doc. 115.)  The Court ordered supplemental briefing on January 25, 2016, and Dynabursky submitted this supplemental briefing on January 27, 2016.  (Order re: supp'l briefing, Doc. 119; Supp'l Brief, Doc. 120.)  Having read and considered the parties' briefs and having taken the matter under submission, the Court GRANTS Dynabursky's Motion and sets a final fairness hearing date for August 12, 2016, at 2:30 p.m.

## I.    BACKGROUND

Defendants Alliedbarton Security Services, LP and Alliedbarton Security Services, LLC employed Plaintiff Gregory Dynabursky as an hourly-paid nonexempt security guard from October 2011 to March 2012.  (Compl. ¶ 7, Doc. 1.)  On December 21, 2012, Dynabursky filed a class action wage and hour lawsuit against Defendants.  (*See* Compl.)  In the Complaint, Dynabursky alleges the following claims: (1) failure to provide meal breaks, Cal. Lab. Code §§ 226.7, 512; (2) failure to provide rest breaks, Cal. Lab. Code § 226.7; (3) improper wage statements, Cal. Lab. Code § 226; and (4) violation of California's unfair competition law, Cal. Bus. & Prof. Code § 17200, *et seq.*  (*Id.* ¶¶ 30-

54.)  On January 29, 2014, the Court certified the following classes and subclasses in the *Dynabursky* action:

> Meal Break Subclass (a): All of Defendant's past and present California employees who worked more than 6 hours in any "on-duty meal break" work shift as a Security Officer from December 21, 2008 through the present.

> Meal Break Subclass (b): All of Defendant's past and present California employees who worked more than 6 hours in any "on-duty meal break" work shift as a Security Officer from December 21, 2008 through the present who received itemized wage statements.

> Rest Break Class: All of Defendant's past and present California employees who worked 3.5 hours or more in any work shift as a Security Officer from December 21, 2008 through the present.

> Rest Break Subclass: All of Defendant's past and present California employees who worked 3.5 hours or more in any work shift as a Security Officer from December 21, 2008 through the present who received itemized wage statements.

(Class Cert. Order, Doc. 71.)

Two similar actions were also filed against Defendants in California state court.  On April 1, 2008, Plaintiff Mikhail Babeshkov filed a class action wage and hour lawsuit against Defendants in Los Angeles Superior Court.  (*See* Babeshkov Compl., Hawkins Decl. Ex. A, Doc. 117.)  On behalf of himself and all non-exempt employees employed by Defendants in California, Babeshkov alleges the following claims: (1) failure to pay all wages, including overtime premiums, Cal. Lab. Code §§ 201-03.510, 558, 1194; (2) failure to provide rest periods and meal periods, Cal. Lab. Code §§ 226.7, 512; (3) failure to timely pay all wages due at termination, Cal. Lab. Code §§ 201-03; and (4) violation of California's unfair competition law, Cal. Bus. & Prof. Code § 17200, *et seq.*  (Babeshkov Compl. ¶¶ 1, 40-67.)  On August 4, 2014, Plaintiff Jose Aguirre filed an enforcement action for recovery of civil penalties under California's Private Attorneys General Act. (*See* Aguirre Compl., Hawkins Decl. Ex. B, Doc. 117.)  On behalf of himself and all non-exempt employees employed by Alliedbarton Security Services, LP, Aguirre seeks penalties for the following violations: (1) failure to provide rest breaks, Cal. Lab. Code

§ 226.7, (2) failure to provide meal breaks, Cal. Lab. Code §§ 226.7, 512, (3) failure to provide paid recovery periods, Cal. Lab. Code § 226.7, and (4) failure to authorize and permit compliant paid rest periods, Cal. Lab. Code § 1198. (Aguirre Compl. ¶¶ 23-43.) Counsel for Babeshkov and Aguirre assert that "the predominate claims in both the Babeshkov and Aguirre actions derive from the same rights at issue in [the Dynabursky action]." (Hawkins Decl. ¶ 4, Doc. 117.) "The predominate claims in all actions involve the failure of Defendants to provide off-duty meal periods and rest breaks and related off-the-clock work, and the resulting restitutionary wages owed under Labor Code § 226.7." (*Id.*)

Plaintiffs' Counsel assert they have conducted a thorough investigation into the facts of these actions. (Joint Stip. ¶ 4, Doc. 116.) Defendants produced wage and hour policies, timesheets, post orders, wage statements, personnel records, and other relevant documents related to class members' employment for Plaintiffs' Counsel's review. (*Id.*) Numerous rounds of motion practice have taken place, including motions for class certification. (*Id.*) Plaintiffs' Counsel have conducted witness interviews of putative class members and have taken depositions of Defendants' persons-most-knowledgable. (*Id.*) On January 9, 2015, the parties participated in mediation, which resulted in this proposed settlement. (Joint Stip. ¶ 5.) Through the mediation process, the parties agreed upon the material terms of a proposed global settlement for all three actions. (*Id.* ¶¶ 5-6.)

The settlement provides for a non-reversionary gross settlement fund of $11 million. (*Id.* ¶ 11.) Plaintiffs' Counsel assert that Defendants' total potential liability for the three actions at issue amounts to approximately $40 million. (*See* Lee Decl. ¶ 2, Doc. 115-1.) The settlement class is defined as: "All non-exempt hourly employees who were employed by Defendants in California at any time from April 1, 2004 through January 9, 2015." (Joint Stip. ¶ 7.) The parties assert that this class definition expands the classes and subclasses certified in the *Dynabursky* action such that it includes the claims and employees in the *Babeshkov* and *Aguirre* actions. (Mem. at 7, Doc. 115.) The parties

4

1  believe that the proposed settlement class is comprised of approximately 43,893

2  individuals.[1]  (Joint Stip. ¶ 7.)

3        After deducting attorneys' fees, litigation costs, Plaintiffs' service payments, the

4  costs of administering the settlement fund, and a $37,500 payment to the California Labor

5  and Workforce Development Agency for PAGA penalties, the net settlement amount will

6  be used to provide settlement payments to each class member.  (*Id.* ¶ 12.)  Individual

7  settlement allocations will depend on each class members' length of employment with

8  Defendants and will be distributed on a *pro rata* basis.  (*Id.* ¶¶ 11, 14.)  Unless a class

9  member timely and properly opts out of the settlement, she will be entitled to her

10  individual settlement payment.  (*Id.* ¶¶ 15.)

11        In return for net settlement fund payments, Plaintiffs and settlement class members

12  fully release and discharge Released Parties from the following:

13

14        [A]ny and all claims, debts, liabilities, demands, obligations, guarantees,
           costs, expenses, interest, attorneys' fees, damages, penalties, action[s] or
           causes of action under California state law which were raised or could have
15         been raised in the Actions during the Settlement Class Period of April 1,
           2004 through January 9, 2015 based on the facts alleged therein by Named
16         Plaintiffs against Defendants . . . .

17

18  (*Id.* ¶ 45.)  The "Released Parties" include (a) all of Defendants' present and former parent

19  companies, subsidiaries, related or affiliated companies, (b) Defendant's divisions, and

20

21  _____

22

23        [1] The Joint Stipulation also provides the following: "If the actual class-size exceeds this
    estimation by more than 5% but less than 10%, the settlement amount shall be increased on a pro

24  rata basis up to a maximum of an additional 10% pro rata.  Should the excess be more than 10% in
    the aggregate, Plaintiff shall have the right to rescind the Settlement Agreement.  If more than 5%

25  but less than 10% of the class in Dynaburdky, Babeshkov and Aguirre, in the aggregate opts out,
    the Settlement Amount shall be reduced on a pro rata basis up to a maximum of 10%.  If more

26  than 10% of the class opts out, Defendants have the right to rescind the Agreement."  (Joint Stip.

27  ¶ 7.)

28

                                         5

1   (c) the shareholders, officers, directors, employees, agents, attorneys, insurers, and

2   successors and assigns of these entities.  (*Id*. ¶ 44.)

3          The settlement provides that Class Counsel will request (1) a fee award of up to

4   one-third of the settlement fund and (2) an award of costs up to $100,000.  (*Id*. ¶¶ 20-21.)

5   To the extent the Court does not approve the amount of attorneys' fees and costs sought by

6   Class Counsel, any amount disallowed by the Court will remain a part of the net settlement

7   fund to be distributed *pro rata* to settlement class members.  (*Id*. ¶ 11.)  The settlement

8   further provides that Plaintiffs may apply for service payments of up to $10,000 each,

9   which, if granted, will be in addition to the amount each Plaintiff would otherwise receive

10  as a Class Member.  (*Id*. ¶ 23.)  Defendants agree to not oppose applications seeking the

11  above attorneys' fees, costs, and service payments.  (*Id*. ¶¶ 20-21, 23.)  The settlement

12  administrator will also be paid from the gross settlement fund for the reasonable costs of

13  administering this settlement, which the Stipulation estimates will not exceed $219,000.

14  (*Id*. ¶ 24.)  Subject to the Court's approval, the parties agree to appoint Rust Consulting as

15  the claims administrator in this global settlement.  (*Id*. ¶ 27.)

16         The Stipulation also enumerates the process for Class Notice.  Defendants will

17  provide the claims administrator with the following information about each Class Member:

18  his or her name, last known mailing address, employment dates during the settlement class

19  period, social security number, and data to determine the number of weeks worked by the

20  class member.  (*Id*. ¶ 28.)  The claims administrator will run a check of the class members'

21  addresses against those on file with the U.S. Postal Service's National Change of Address

22  list.  (*Id*.)  Within thirty days following preliminary approval of the settlement, the claims

23  administrator will mail the class notice by first class mail.  (*Id*. ¶ 29.)  If a new address is

24  obtained by way of a returned notice, the claims administrator will promptly forward the

25  original notice to the updated address via first class mail.  (*Id*. ¶ 30.)  If a notice is returned

26  as undeliverable and without a forwarding address, the claims administrator will perform a

27  "skiptrace" search to obtain an updated address.  (*Id*.)

28

Generally, class members will have sixty days from the initial mailing of class notice to seek exclusion from the settlement or object to its terms.  (*Id*. ¶¶ 31, 35.)  For those class members whose notices were re-mailed due to a bad address or forwarding, they must postmark an exclusion request within thirty days of the re-mailing or by the above exclusion deadline, whichever is later.  (*Id*. ¶ 30.)  Any class members who fail to provide timely objections to the settlement are deemed to have waived any objections and will be foreclosed from making any objection to the settlement.  (*Id*. ¶ 36.)

Dynabursky now moves for preliminary approval of the proposed global settlement. (Mot.)  The parties contend that the proposed settlement is fair, reasonable, adequate, and in the best interest of the proposed class.  (Joint Stip. ¶ 4.)  In his motion, Dynabursky failed to provide any information explaining why the Court should approve the proposed claims administrator, Rust Consulting.  (*See* Order re: supp'l briefing, Doc. 119.)   On January 27, 2016, Dynabursky filed a supplemental brief addressing this issue.  (Supp'l Brief, Doc. 120.)

## II.   CONDITIONAL CERTIFICATION OF THE CLASS

Dynabursky asks the Court to conditionally certify the settlement class for settlement purposes under Rule 23(a) and 23(b)(3).  (Mem. at 7.)  Dynabursky asserts that certification is proper for the same reasons this Court previously granted class certification of the *Dynabursky* class and subclasses.  (*Id*.)  For the same reasons identified in the Court's prior order granting class certification of the *Dynabursky* class and subclasses, the Court finds that the settlement class satisfies numerosity, commonality, predominance, and superiority under Rule 23(a) and Rule 23(b)(3).  (*See* Class Cert. Order, Doc. 71.) However, because Dynabursky requests that we appoint additional class representatives and class counsel for the settlement class, we address typicality and adequacy below.

1            **A.  Typicality**

2       Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be]

3  typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "[U]nder the

4  rule's permissive standards, representative claims are 'typical' if they are reasonably

5  coextensive with those of absent class members; they need not be substantially identical."

6  *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 613 (9th Cir. 2010) (en banc) (quoting

7  *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1020 (9th Cir. 1998)), *rev'd on other grounds*,

8  131 S. Ct. 2541 (2011).  As to the representative, "[t]ypicality requires that the named

9  plaintiffs be members of the class they represent."  *Id.* (citing *Gen. Tech. Co. of Sw. v.*

10  *Falcon*, 457 U.S. 147, 156 (1982)).  The commonality, typicality, and adequacy-of-

11  representation requirements "tend to merge" with each other.  *Dukes*, 131 S. Ct. at 2551

12  n.5 (citing *Falcon*, 457 U.S. at 157-58 n.13).

13       Here, Dynabursky asks that the Named Plaintiffs of each action—Dynabursky,

14  Babeshkov, and Aguirre—be named class representatives.  (*See* Proposed Order ¶ 9, Doc.

15  115-6.)  The Named Plaintiffs' claims, like those of the proposed class, are based on their

16  contention that Defendants imposed employment practices and policies that were

17  noncompliant with state wage and hour laws.  The claims arise from the same alleged

18  conduct of Defendants, and the Named Plaintiffs are within the settlement class definition.

19  Thus, typicality is met.

20

21            **B.  Adequacy**

22       Rule 23(a)(4) permits certification of a class action only if "the representative

23  parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P.

24  23(a)(4).  "Resolution of two questions determines legal adequacy: (1) do the named

25  plaintiffs and their counsel have any conflicts of interest with other class members and

26  (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of

27  the class?"  *Hanlon*, 150 F.3d at 1020.

28

The Named Plaintiffs' claims arise out of the same set of facts as the claims for the proposed class, and their interest in obtaining the maximum recovery is coextensive with the interests of the class members.  Dynabursky asserts that the Named Plaintiffs have expended effort to effectively prosecute each case and protect the interests of the settlement class.  (Mem. at 17.)  The Court finds no sign of a potential conflict of interest between the Named Plaintiffs and the class members they seek to represent.  Accordingly, the Court concludes that the Named Plaintiffs are adequate class representatives.

As to the adequacy of Plaintiffs' Counsel, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).  Here, Dynabursky asks that the Court appoint Larry W. Lee, Nick Rosenthal, Edward W. Choi, Dennis S. Hyun, James R. Hawkins, Matthew S. Dente, Brian J. Robbins, and Diane E. Richard as Class Counsel in this action.  (Proposed Order ¶ 8.) Plaintiffs' Counsel have provided declarations describing counsel's experience in litigating wage and hour claims on a class and individual basis.  (*See* Lee Decl. ¶¶ 16-18; Choi Decl. ¶¶ 7-8, Doc. 115-2; Hyun Decl. ¶¶ 9-12, Doc. 115-3; Richard Decl. ¶¶ 3-6, Doc. 115-4; Dente Decl. ¶¶ 3-5, Doc. 115-5; Hawkins Decl. ¶ 3, Doc. 117.)  From this experience, it would appear that counsel have knowledge of the applicable law in this area.  Counsel have also identified the work they performed in these actions, including identifying and investigating potential claims, preparing court filings, conducting formal and informal discovery, and negotiating the proposed settlement.  (Lee Decl. ¶¶ 2-11; Choi Decl. ¶ 3; Hyun Decl. ¶¶ 2-5; Richard Decl. ¶¶ 8, 10-12; Dente Decl. ¶¶ 7-11; Hawkins Decl. ¶¶ 5-9.) Based on the experience and work of Plaintiffs' Counsel, the Court concludes that Plaintiffs' Counsel have satisfied the adequacy requirement.  The Court therefore appoints

1   Larry W. Lee, Nick Rosenthal, Edward W. Choi, Dennis S. Hyun, James R. Hawkins,

2   Matthew S. Dente, Brian J. Robbins, and Diane E. Richard as Class Counsel in this action.

3          Having found that the proposed settlement class satisfies the remaining elements of

4   Rule 23(a), the Court conditionally certifies the class for settlement purposes only.

5

6   **III.   PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

7          To preliminarily approve a proposed class-action settlement, Rule 23(e)(2) requires

8   the Court to determine whether the proposed settlement is fair, reasonable, and adequate.

9   Fed. R. Civ. P. 23(e)(2).  In turn, review of a proposed settlement typically proceeds in two

10  stages, with preliminary approval followed by a final fairness hearing.  Federal Judicial

11  Center, *Manual for Complex Litigation*, § 21.632 (4th ed. 2004).

12         "To determine whether a settlement agreement meets these standards, a district

13  court must consider a number of factors, including: the strength of plaintiffs' case; the risk,

14  expense, complexity, and likely duration of further litigation; the risk of maintaining class

15  action status throughout the trial; the amount offered in settlement; the extent of discovery

16  completed, and the stage of the proceedings; the experience and views of counsel; the

17  presence of a governmental participant;[2] and the reaction of the class members to the

18  proposed settlement." *Staton*, 327 F.3d at 959 (internal citation and quotation marks

19  omitted).  "The relative degree of importance to be attached to any particular factor will

20  depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief

21  sought, and the unique facts and circumstances presented by each individual case."

22  *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th

23  Cir. 1982).  "'It is the settlement taken as a whole, rather than the individual component

24  parts, that must be examined for overall fairness,' and 'the settlement must stand or fall in

25

26  _____

27         [2] This factor does not apply in this case.

28

10

1  its entirety.'"  *Staton*, 327 F.3d at 960 (quoting *Hanlon*, 150 F.3d at 1026) (alterations

2  omitted).

3          In addition to these factors, where "a settlement agreement is negotiated *prior* to

4  formal class certification," the Court must also satisfy itself that "the settlement is not the

5  product of collusion among the negotiating parties."  *In re Bluetooth Headset Prods. Liab.*

6  *Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011) (quotation marks and citation omitted).

7  Accordingly, the Court must look for explicit collusion and "more subtle signs that class

8  counsel have allowed pursuit of their own self-interests and that of certain class members

9  to infect the negotiations."  *Id.* at 947.  Such signs include (1) "when counsel receive a

10  disproportionate distribution of the settlement," (2) "when the parties negotiate a 'clear

11  sailing' arrangement providing for the payment of attorneys' fees separate and apart from

12  class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants

13  rather than be added to the class fund."  *Id.* (quotation marks and citations omitted).

14          At this preliminary stage and because Class Members will receive an opportunity to

15  be heard on the settlement, "a full fairness analysis is unnecessary . . . ."  *Alberto v. GMRI,*

16  *Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008).  Instead, preliminary approval and notice of

17  the settlement terms to the proposed class are appropriate where "[1] the proposed

18  settlement appears to be the product of serious, informed, non-collusive negotiations, [2]

19  has no obvious deficiencies, [3] does not improperly grant preferential treatment to class

20  representatives or segments of the class, and [4] falls within the range of *possible* approval

21  . . . ."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)

22  (internal quotation marks and citation omitted) (emphasis added); *see also Acosta v. Trans*

23  *Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary

24  approval is appropriate, the settlement need only be *potentially* fair, as the Court will make

25  a final determination of its adequacy at the hearing on the Final Approval, after such time

26  as any party has had a chance to object and/or opt out.") (emphasis in original).

27

28

In evaluating all applicable factors below, the Court finds that the proposed settlement agreement should be preliminarily approved.

### A.  **Strength of Plaintiff's Case**

The principal claims at issue here involve Defendants' alleged failure to provide meal periods, rest periods, restitutionary wages, and itemized wage statements required under the California Labor Code.  While Plaintiffs are confident they would prevail on the merits of their claims, Defendants dispute the above claims and assert they have fully complied with the law.  (*See* Mem. at 13; Joint Stip. ¶ 3.)  In the *Dynabursky* action, Defendants filed motions for partial summary judgment and class decertification and were poised to raise several legal and factual challenges.  (Docs. 90, 101.)  However, in the midst of briefing, the parties filed a notice of settlement.  (Doc. 102.)  Defendants contend that if the litigation were to continue, they would prevail on these issues.  (Mem. at 13.) The Court finds that given these potential obstacles, this factor weighs in favor of granting preliminary approval.

### B.  **Risk, Complexity, and Likely Duration of Further Litigation**

Dynabursky argues that continued litigation would become costly, time consuming, and uncertain.  (Mem. at 13-16.)  Although Dynabursky emphasizes the meritorious nature of the class claims, he observes that continued litigation would result in uncertainty "in terms of both outcome and duration."  (*Id*. at 14.)   Settlement eliminates the risks inherent in Defendants' motions for summary judgment and class decertification, trial, and subsequent appeals, and it may provide the last opportunity for class members to obtain relief.  This factor therefore weighs in favor of granting preliminary approval.  *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." (citation omitted)).

1

2       **C.  Risk of Maintaining Class Certification**

3         This Court previously certified the *Dynabursky* action, (Doc. 71), and Defendants

4   later filed a motion for class decertification, (Doc. 101).  Although the Court did not

5   address this motion given the parties' notice of settlement, (Doc. 102), Defendants may

6   again move to decertify the *Dynabursky* action if this settlement is not approved.  The risk

7   of decertification should the action proceed favors preliminary approval.

8

9       **D.  Amount Offered in Settlement**

10        The Court finds that the amount offered in settlement is reasonable.  The proposed

11  settlement provides for a gross settlement fund of $11 million, which is a substantial

12  benefit to the class.  (Joint Stip. ¶ 11.)  No portion of the settlement fund will revert back

13  to Defendants.  (*Id.*)  This amount represents approximately 27.5% of Defendants'

14  maximum potential liability of $40 million, as calculated by Class Counsel.  (*See* Lee

15  Decl. ¶ 2.)  A "settlement amounting to only a fraction of the potential recovery does not

16  per se render the settlement inadequate or unfair," *In re Mego Fin. Corp. Sec. Litig*., 213

17  F.3d 454, 459 (9th Cir. 2000) (internal quotation marks and citation omitted), and this

18  percentage equals or surpasses the recovery in other wage and hour class actions.  *See*

19  *Greko v. Diesel U.S.A., Inc.*, No. 10-CV-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal.

20  Apr. 26, 2013) (finding settlement amount of a wage and hour class action that constituted

21  24% of estimated damages to be reasonable and beneficial to the class); *Glass v. UBS Fin.*

22  *Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007),

23  *aff'd*, 331 F. App'x 452 (9th Cir. 2009) (finding settlement of a wage and hour class action

24  that constituted 25% to 35% of the claimed damages to be reasonable); *Bellinghausen v.*

25  *Tractor Supply Co.*, 303 F.R.D. 611, 623-24 (N.D. Cal. 2014) (finding settlement amount

26  of a wage and hour class action that equaled between 9% and 27% of the total potential

27  liability to be fair, adequate and reasonable given the uncertainty of continued litigation).

28

1    Accordingly, in considering the difficulties of potential recovery, the Court finds that the

2    amount offered in settlement weighs in favor of preliminary approval.

3          The allocation of settlement funds also appears fair, adequate, and reasonable.

4    Individual settlement allocations are determined by each class member's length of

5    employment.  (Joint Stip. ¶¶ 11, 14.)  Accordingly, the plan provides each class member

6    with a *pro rata* share of the net settlement fund.  *See In re Oracle Sec. Litig.*, No. C-90-

7    0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994) ("A plan of allocation that

8    reimburses class members based on the extent of their injuries is generally reasonable.").

9    This weighs in favor of preliminary approval.

10          Finally, the amount of the settlement also appears fair, adequate, and reasonable in

11   light of the claims released by Plaintiffs and Settlement Class Members.  Each class

12   member will release "any and all claims . . . under California state law which were raised

13   or could have been raised in the Actions during the Settlement Class Period of April 1,

14   2004 through January 9, 2015 based on the facts alleged therein by Named Plaintiffs

15   against Defendants."[3]  (Joint Stip. ¶ 45.)  The scope of this release weighs in favor of

16   preliminary approval.  *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A

17   settlement agreement may preclude a party from bringing a related claim in the future even

18   though the claim was not presented and might not have been presentable in the class

19   action, but only where the released claim is based on the identical factual predicate as that

20   underlying the claims in the settled class action." (internal quotation marks and citation

21   omitted)).

22

23

24

25   _____

26

27        [3] In addition to the released claims set forth above, the Named Plaintiffs additionally release all claims related to their employment with Defendants.  (Joint Stip. ¶ 47.)

28

14

1       **1.    *The Court's Concerns***

2              Although the Court does not approve the proposed amount of attorneys' fees and

3       service payments at this stage, the Court raises its concerns with Plaintiffs' proposed

4       awards.  First, the settlement provides for attorneys' fees of one-third the gross settlement

5       fund, subject to court approval.  (*See* Joint Stip. ¶¶ 12, 20.)  In the Ninth Circuit, the

6       benchmark for fees is 25% of the common fund.  *See In re Bluetooth*, 654 F.3d at 942.

7       Before final approval, the court will "scrutinize closely the relationship between attorneys'

8       fees and benefit to the class" and will not "award[] unreasonably high fees simply because

9       they are uncontested."  *Id.* at 948 (internal quotation marks and citation omitted).  Class

10      Counsel must therefore make a sufficient showing justifying any upward departure from

11      the Ninth Circuit's fees benchmark to be awarded one-third of the settlement fund.

12      Second, the settlement provides that the Named Plaintiffs may apply for service payments

13      of $10,000, subject to court approval.  (Joint Stip. ¶¶ 12, 23.)  In his Application for Fees

14      and Costs, Dynabursky must justify why the requested service payments are reasonable.

15      Dynabursky is cautioned that the requested attorneys' fees and service payments must be

16      reasonable and justified in light of the circumstances of the case.

17

18      **E.  Stage of the Proceedings and Extent of Discovery Completed**

19             This factor requires the Court to evaluate whether "the parties have sufficient

20      information to make an informed decision about settlement."  *Linney v. Cellular Alaska*

21      *P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).  Discovery can be both formal and informal.

22      *See Clesceri v. Beach City Investigations & Protective Servs., Inc.*, No. CV-10-3873-JST

23      (RZx), 2011 WL 320998, at *9 (C.D. Cal. Jan. 27, 2011).  Here, Plaintiffs' Counsel

24      received policy and procedure documents, time and pay records, scheduling documents,

25      work orders, and sample client contracts.  (Hawkins Decl. ¶ 5; Dente Decl. ¶ 7; Richard

26      Decl. ¶ 8.)  Plaintiffs' Counsel reviewed and analyzed the provided documents to assess

27      the strength and value of the claims at issue.  (Hawkins Decl. ¶¶ 5-9; Dente Decl. ¶¶ 7-11;

28

Richard Decl. ¶¶ 7-12.)  Dynabursky also took the depositions of Defendants' persons-most-knowledgable, and Defendants took Dynabursky's deposition.  (Lee Decl. ¶¶ 2-7; Hyun Decl. ¶¶ 2-3; Choi Decl. ¶¶ 3-4.)  Plaintiffs' Counsel also interviewed numerous putative class members regarding their claims.  (Lee Decl. ¶ 6; Hyun Decl. ¶ 3; Choi Decl. ¶ 3; Hawkins Decl. ¶ 5; Dente Decl. ¶ 7; Richard Decl. ¶ 8.)  Given these facts, the Court concludes that the parties possess sufficient information to make an informed settlement decision.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (finding plaintiffs had "sufficient information to make an informed decision about the [s]ettlement" where formal discovery had not been completed but class counsel had "conducted significant investigation, discovery and research, and presented the court with documentation supporting those services.").  Accordingly, this factor weighs in favor of granting preliminary approval.

## F.  Experience and Views of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation omitted).  As discussed above, Class Counsel have experience serving as plaintiffs' counsel in wage and hour actions, and they have endorsed the settlement as fair, reasonable, and adequate.  (Choi Decl. ¶ 5; Hyun Decl. ¶ 4; Lee Decl. ¶¶ 2, 11.)  Thus, this factor favors preliminary approval.

## G.  Reaction of Class Members to Proposed Settlement

Dynabursky has not provided evidence of the class members' or Named Plaintiffs' reactions to the proposed settlement.  However, the Court recognizes that the lack of such evidence is not uncommon at the preliminary approval stage.  Before the final fairness hearing, Class Counsel shall submit a sufficient number of declarations from class members discussing their reactions to the proposed settlement.  In addition, a small

16

1  number of objections at the time of the fairness hearing may raise a presumption that the

2  settlement is favorable to the class.  *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at

3  1043.

4

5      **H. <u>Signs of Collusion</u>**

6      The Court finds no signs, explicit or subtle, of collusion between the parties.  Of

7  course, before final approval, the court will "scrutinize closely the relationship between

8  attorneys' fees and benefit to the class" and will not "award[] unreasonably high fees

9  simply because they are uncontested."  *In re Bluetooth*, 654 F.3d at 948 (internal quotation

10  marks and citation omitted).  The Court will also ultimately determine whether the

11  requested amounts of service payments are justified by the circumstances of this case.

12  Notably, unawarded amounts will remain in the gross settlement fund for the benefit of the

13  settlement class.  Moreover, as discussed above, this settlement is the result of a mediation

14  held before a wage and hour class action mediator, Steve Serratore.  (Joint Stip. ¶ 5.)  A

15  mediator's involvement in the settlement supports the argument that it is non-collusive.

16  *See Satchell v. Fed. Express Corp.*, No. C 03-2879 SI, 2007 WL 1114010, at *4 (N.D. Cal.

17  Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process

18  confirms that the settlement is non-collusive.").

19      Considering all of the factors together, the Court preliminarily concludes that the

20  settlement is fair, reasonable, and adequate.

21

22  **IV.    APPROVAL OF THE PROPOSED CLAIMS ADMINISTRATOR**

23      The parties agreed to appoint Rust Consulting as the claims administrator in this

24  action, subject to the Court's approval.  (*See* Joint Stip. ¶ 27.)  In Dynabursky's

25  supplemental briefing, he provides sufficient documentation of Rust Consulting's

26  competence in carrying out the duties of a claims administrator.  (Suppl. Brief at 1-2; Paul

27  Decl. ¶ 2, Ex. 1, Doc. 120-3.)  Moreover, courts in this circuit have approved Rust

28

Consulting as the claims administrator in other class action settlements.  *See Collins v. Cargill Meat Sols. Corp*., 274 F.R.D. 294, 304 (E.D. Cal. 2011) (appointing Rust Consulting); *Garner v. State Farm Mut. Auto Ins. Co*., No. CV 08-1365 CW (EMC), 2010 WL 1687832, at *4 (N.D. Cal. Apr. 22, 2010) (noting that the Court previously appointed Rust Consulting at the preliminary approval stage).  Accordingly, the Court approves Rust Consulting as the claims administrator in this action.

## V.  PRELIMINARY APPROVAL OF CLASS NOTICE FORM AND METHOD

For a class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B). However, actual notice is not required.  *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

Pursuant to the settlement, Defendants will provide the claims administrator with the following information about each class member: his or her name, last known mailing address, employment dates during the settlement class period, social security number, and data to determine the number of weeks worked by the class member.  (Joint Stip. ¶ 28.) The claims administrator will run a check of the class members' addresses against those on file with the U.S. Postal Service's National Change of Address list.  (*Id*.)  Within thirty days following preliminary approval of the settlement, the claims administrator will mail the class notice by first class mail.  (*Id*. ¶ 29.)  If a new address is obtained by way of a returned notice, the claims administrator will promptly forward the original notice to the updated address via first class mail.  (*Id*. ¶ 30.)  If a notice is returned as undeliverable and without a forwarding address, the claims administrator will perform a "skiptrace" search to obtain an updated address.  (*Id*.)  Generally, class members will have sixty days from the initial mailing of class notice to seek exclusion from the settlement or object to its terms. (*Id*. ¶¶ 31, 35.)  For those class members whose notices were re-mailed due to a bad

address or forwarding, they must postmark an exclusion request within thirty days of the re-mailing or by the above exclusion deadline, whichever is later.  (*Id.* ¶ 30.)  The Supreme Court has found notice by mail to be sufficient if the notice is "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *accord Sullivan v. Am. Express Publ'g Corp.*, No. SACV 09-142-JST ANx, 2011 WL 2600702 at *8 (C.D. Cal. June 30, 2011) (quoting *Mullane*).  The Court finds that the proposed procedure for class notice satisfies this standard.

Dynabursky has provided the Court with a copy of the proposed notice.  (Class Notice, Joint Stip. Ex. A, Doc. 116.)  Under Rule 23, the notice must include, in a manner that is understandable to potential class members: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).  The proposed notice includes this necessary information.  (*See* Class Notice.)

The Court, however, requires the notice to be modified as follows:

- Under Section 8 ("What if I want to object to this settlement"), the notice must eliminate any reference to filing a written objection with the Court.  Plaintiff's Counsel are responsible for filing, in connection with Plaintiff's motion for final approval, any objections along with a brief responding to such objections.  Accordingly, the notice should instruct class members to object by mailing a written objection to Plaintiff's Counsel, Counsel for Defendants, and the claims administrator at the indicated addresses.

- Under Section 11 ("How will the lawyers be paid?") and Section 15 ("How do I get more information?"), the notice should also state that all papers filed in this

action will also be available for review via the Public Access to Court Electronic Resources System (PACER), available online at http://www.pacer.gov.

• Under Section 9 ("Will the Named Plaintiffs be compensated for bringing this lawsuit?"), the notice must mirror the language in Section 11 (with the addition identified above) setting forth that a copy of the application for fees and costs will be available for review.  As explained earlier in this order, Dynabursky must adequately justify the requested service payments in the application for fees and costs.  The notice must indicate that a copy of this application can be viewed at the Courthouse and through PACER by the filing deadline identified below.

• Under Section 15 ("How do I get more information"), the notice should also identify the claims administrator's contact information, *i.e.*, its phone number and address.

Subject to the changes discussed above, the Court approves the form and method of class notice.  The Court ORDERS the parties to file a revised version of the Full Notice within **10 days** of this Order.

Finally, although the settlement agreement provides that Plaintiffs' Counsel will submit an application for fees and costs no later than ten days before the exclusion deadline, (Joint Stip. ¶ 20), the Court requires that any motion for attorneys' fees, costs, *and service payments* be filed with the Court **no later than 15 days before** the exclusion deadline.  Plaintiffs shall file their motion for final approval no later than **July 15, 2016**, including a brief responding to any submitted objections and otherwise summarizing the class members' participation in the settlement and the settlement administration to date.

Finally, the Court notes that its jurisdiction over this matter arises in part from the Class Action Fairness Act.  (*See* Compl. ¶ 1.)  In their papers for final approval of the settlement, the parties must also include a declaration reflecting that they provided appropriate notice of the proposed settlement to relevant state and federal authorities per

the terms of 28 U.S.C. § 1715(b) at least 90 days prior to the date for the final fairness hearing.  28 U.S.C. § 1715(d).  *True v. Am. Honda Motor Co*., 749 F. Supp. 2d 1052, 1059 n.5 (C.D. Cal. 2010) (recognizing that the Class Action Fairness Act "requires that notice [of a proposed settlement] be sent to 'the appropriate State official of each State in which a class member resides and the appropriate Federal official.'" (quoting 28 U.S.C § 1715(b)).

## VI.   CONCLUSION

For the reasons discussed above, the Court (1) conditionally certifies the class for settlement purposes only, (2) preliminarily approves the settlement, (3) names Gregory Dynabursky, Mikhail Babeshkov, and Jose Aguirre as Class Representatives, (4) names Larry W. Lee, Nick Rosenthal, Edward W. Choi, Dennis S. Hyun, James R. Hawkins, Matthew S. Dente, Brian J. Robbins, and Diane E. Richard as Class Counsel, (5) approves Rust Consulting as the claims administrator, and (6) approves the form and method of class notice, subject to the changes discussed above.  The Court ORDERS the parties to file a revised version of the Full Notice within **10 days** of this Order.

The Court sets a final fairness hearing for **August 12, 2016, at 2:30 p.m.**, to determine whether the settlement should be finally approved as fair, reasonable, and adequate to Class Members.  Plaintiffs shall file their motion for final approval no later than **July 15, 2016**.  Class Counsel shall file any supplemental brief in support of their application for fees and costs **no later than 15 days before** the exclusion deadline.  The Court reserves the right to continue the date of the final fairness hearing without further notice to class members.

DATED:  March 31, 2016

_____
JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE