1  Larry W. Lee (State Bar No. 228175)
2  lwlee@diversitylaw.com
   **DIVERSITY LAW GROUP, P.C.**
3  515 S. Figueroa St. Suite 1250
4  Los Angeles, California 90071
   (213) 488-6555
5  (213) 488-6554 facsimile
6
7  Attorneys for Plaintiffs and the Class
       *   Additional Counsel Listed
8           On Following Page
9

10              **UNITED STATES DISTRICT COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12

13  GREGORY DYNABURSKY, as an              Case No. 8:12-cv-02210-JLS-RNB
14  individual and on behalf of all others similarly
    situated,                              **PLAINTIFFS' NOTICE OF MOTION AND**
15                                          **MOTION FOR APPROVAL OF**
                                            **ATTORNEYS' FEES AND COSTS AND**
16          Plaintiff,                      **REPRESENTATIVE SERVICE**
                                            **PAYMENTS; AND MEMORANDUM OF**
17      vs.                                 **POINTS AND AUTHORITIES IN**
18                                          **SUPPORT**
19  ALLIEDBARTON SECURITY
20  SERVICES, LP and ALLIEDBARTON
    SECURITY SERVICES, LLC; and DOES        Date:          August 12, 2016
21  1 through 50, inclusive,                Time:          2:30 p.m.
                                            Courtroom:     10A
22          Defendants.                     Judge:         Hon. Josephine L. Staton
23
24                                          Trial Date:    Not Set
25                                          Discovery Cutoff: Not Set
26
27
28

**PLAINTIFFS' COUNSEL**

Dennis S. Hyun (State Bar No. 224240)
dhyun@hyunlegal.com
**HYUN LEGAL, APC**
515 S. Figueroa St. Suite 1250
Los Angeles, CA 90071
Telephone:    (213) 488-6555
Facsimile:    (213) 488-6554

Edward W. Choi, Esq. SBN 211334
edward.choi@calaw.biz
Paul M. Yi, Esq. SBN 207867
paul.yi@calaw.biz
**LAW OFFICES OF CHOI & ASSOCIATES, P.C.**
515 S. Figueroa St. Suite 1250
Los Angeles, CA 90071
Telephone: (213) 381-1515
Facsimile: (213) 233-4409

JAMES HAWKINS APLC
JAMES R. HAWKINS (SB# 192925)
james@jameshawkinsaplc.com
9880 Research Drive, Suite 200
Irvine, CA 92618
Telephone:    (949) 387-7200
Facsimile:    (949) 387-6676

DENTE RICHARD LLP
MATTHEW S. DENTE (SB# 241547)
DIANE E. RICHARD (SB# 204897)
550 West C Street, Suite 1950
San Diego, CA 92101
Telephone: (619) 550-3475
Facsimile: (619) 342-9668
matt@denterichard.com
diane@denterichard.com

ROBBINS ARROYO LLP
BRIAN J. ROBBINS (SB# 190264)
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990

Facsimile:  (619) 525-3991
brobbins@robbinsarroyo.com

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that at 2:30 p.m., on August 12, 2016, or as soon thereafter as the matter may be heard in Courtroom 10A of the United States District Court for the Central District of California, Southern Division, located at 411 West Fourth Street, Santa Ana, CA 92701-4516, before the Honorable Josephine L. Staton, Plaintiffs will and hereby do move this Court for an Order granting Class Counsels' application for attorneys' fees in the amount of $3,666,666.67 (equal to 33 1/3% of the gross settlement amount), reimbursement of costs in the amount of $58,735.15 and representative service payments in the amount of $10,000 to each Plaintiff in connection with the class-action and PAGA settlement reached in this case.

This motion will be based on this Notice, the attached Memorandum of Points and Authorities, the accompanying Declarations of Larry W. Lee, Dennis S. Hyun, Edward Choi, Brian J. Robbins, James R. Hawkins, and Diane E. Richard and Plaintiffs, and the pleadings and papers filed herein.


Dated:  June 27, 2016                          DIVERSITY LAW GROUP, P.C.


                                    By: /s/ Larry W. Lee
                                        Larry W. Lee, Esq.
                                        Attorney for Plaintiff and the Class

iv

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................... 1

II.  HISTORY OF THE ACTIONS ...................................................... 3

A.  The *Dynabursky* Case Was Heavily Litigated by Both Parties ............ 3

B.  The *Babeshkov* and *Aguirre* Cases Were Heavily Litigated by the Parties ...... 6

C.  Mediation and Settlement Efforts ................................................ 9

III. ATTORNEY FEE AWARDS IN COMMON FUND CASES ................... 10

A.  The Award Requested .............................................................. 10

B.  The Percentage of the Fund Approach ......................................... 10

C.  Evolution of the Percentage Method ............................................ 13

D.  The Attorneys' Fees Requested by Class Counsel Are Well Within the Range of Fees Awarded in Comparable Cases ......................................... 13

E.  The Percentage Awarded Should Mimic the Market .......................... 17

IV.  THE LODESTAR CALCULATION "CROSS-CHECK" ......................... 19

A.  Plaintiff's Counsels' Lodestar Is Reasonable ................................. 20

B.  The Lodestar Enhancement Is Reasonable ..................................... 21

V.   THE COURT SHOULD APPROVE THE REQUEST FOR REIMBURSEMENT OF COSTS ................................................................................. 23

VI.  THE REPRESENTATIVE SERVICE PAYMENTS SHOULD BE APPROVED ......... 23

VII. CONCLUSION ......................................................................... 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Abdullah v. U.S. Sec. Assoc.'s, Inc.*, 731 F.3d 952 (9th Cir. 2013) ...........................................passim

*Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013)............17

*Benitez v. Wilbur*, No. 1:08–cv–01122 LJO GSA, Doc. No. 52 (E.D. Cal., Dec. 15, 2009) ...................................................................................................................................17

*Bihun v. AT&T Info. Sys.,* 13 Cal App. 4th 976, 997 (1993) ...........................................20

*Birch v. Office Depot, Inc.,* No. 06CV1690 DMS (WMC), slip opin. (S.D. Cal. Sept. 28, 2007) ...................................................................................................................................16

*Bluford v. Safeway, Inc.*, 216 Cal. App. 4th 864, 871 (2013) .........................................4

*Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ...................................................11, 13

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ...........................................11, 12

*Boyd v. Bank of Am. Corp.*, 2014 U.S. Dist. LEXIS 162880 at *22-*23 (C.D. Cal. Nov. 18, 2014) .........................................................................................................16, 23

*Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012)....................................14

*Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913-14 (S.D. Ohio 2001)......................25

*Cambden I Condominium Association, Inc., v. Dunkel*, 946 F. 2d 768 (11th Cir. 1991) ...................17

*Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991) ................11

*Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 128 (1885) ....................................11

*Chavez v. Petrissans*, Case No. 1:08–cv–00122 LJO GSA, Doc. No. 89 (E.D. Cal. Dec. 15, 2009) ...............................................................................................................17

*Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ...............................................25

*Cordy v. USS-Posco Indus.*, No. 12-CV-00553-JST, 2014 WL 212587, at *3 (N.D. Cal. Jan. 17, 2014) ........................................................................................................17

*De Leon v. ServiceLink, Inc.*, 2016 U.S. Dist. LEXIS 55662 (C.D. Cal. 2016)................16

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 251-252 (S.D. Ohio 1991) ....................................................................................................................25

*Fadhl v. Police Dept., City & County of San Francisco*, 1983 WL 514 (N.D. Cal. May 12, 1983)... 13, 23

*Faulkinbury v. Boyd & Assocs., Inc.*, 216 Cal. App. 4th 220 (2013) ....................................passim

*Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990)..................................................... 13

*Florin v. Nations Bank of Georgia*, 34 F.3d 560, 564 (9th Cir. 1994) .....................................21, 22

*Garcia v. Gordon Trucking, Inc.*, No. 1:10–CV–0324 AWI SKO, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012)............................................................................................17

*Glass v. UBS Fin. Servs.*, No. C-06-4068, 2007 U.S. Dist. LEXIS 8476, at *51-52 (N.D. Cal. Jan. 27, 2007)...................................................................................................................25

*Glendora Community Redev. Agency v. Demeter*, 155 Cal. App. 3d 465, 475 (1984).......................21

*Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)..............................................................21

*In re Activision Securities Litigation*, 723 F. Supp. 1373, 1375 (9th Cir. 1989)........................ 10, 14

*In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) .........25

*In re Heritage Bond Litigation*, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ..........................................................................................................................17

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995)......................................13

*In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995)..................................17

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 106 F. Supp. 2d 721 (D.N.J. 2000) ...............19

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299-300 (9th Cir. 1994) .........21

*Internal Improvement Fund Trs. v. Greenough*, 105 U.S. 527, 532 (1881).....................................11

*Kearney v. Hyundai Motor Am.*, No. SACV 09-1298-JST, 2013 WL 3287996, at *5-9 (C.D. Cal. June 28, 2013)..........................................................................................16

*Ketchum vs. Moses*, 24 Cal. 4th 1122, 1133 (2001).........................................................20

*Lealao v. Beneficial Cal., Inc.*, 82 Cal. App.4th 19, 47 (2000) ..........................................12

*Lee v. JPMorgan Chase*, Case No. 8:13-cv-00511-JLS-JPR (C.D. Cal. April 28, 2015).............. 1, 16

*Leyva v. Medline Indus.*, 716 F.3d 510 (9th Cir. 2013) ....................................................4

*Lindy Bros. Bldrs., Inc. of Phila. v. American R. & R. San Corp.*, 487 F.2d 161 (3d Cir. 1973) .........13

*Lindy II*, 540 F.2d 102 (3d Cir. 1976).......................................................................13

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970) ...................................................... 11

*Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003)……………..………..13

*Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles*, 186 Cal. App. 4th 399, 412 (2010) ............. 24

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989)................................ 11

*Rippee v. Boston Mkt. Corp.*, No. 05CV1359 BTM (JMA), slip op. (S.D. Cal. Oct. 10, 2006)........................................................................................................................... 17

*Romero v. Producers Dairy Foods, Inc.*, 2007 U.S. Dist. LEXIS 86270 (E.D. Cal. 2007) ................................................................................................................................. 17

*Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416 at *22-*23 (S.D. Cal. June 1, 2010) ......................................................................................................... 17

*Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165 n.2 (1939)...................................... 11

*Stanton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003) ........................................... 24

*Stetson v. West Publishing Corp.*, Case No. 13-57061, at *11 (9th Cir. May 11, 2016) ............. 14, 19

*Stetson v. West Publishing Corp.*, Case No. 13-57061, at *14 (9th Cir. May 11, 2016) ............. 21, 22

*Trustees v. Greenough*, 105 U.S. 527 (1881) ............................................................... 13

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) ....................... 25

*Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1209-10 (C.D. Cal. 2014)................ passim

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492-93 (E.D. Cal. 2010) ........... 17

*Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977) ............................. 11

*Vizcaino v. Microsoft Corp.*, 290 F. 3d 1043, 1048 (9th Cir. 2002)......................... 14, 17

*Vo v. Las Virgenes Municipal Water Dist.*, 79 Cal. App. 4th 440, 447 (2000)................................ 20

*Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224 (2001) .................................... 13

**Other Authorities**

ALM Legal Intelligence, 2013 NJL Billing Summary ................................................... 22

A. Conte, *Attorney Fee Awards*, 2nd Ed. 1993, 104, p.6........................................... 12

Newberg on Class Actions, Fourth Edition, vol. 4, p. 556, §14.6.……………..………12,17

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

By this motion, Plaintiffs Gregory Dynabursky ("Dynabursky"), Mikhail Babeshkov ("Babeshkov") and Jose Aguirre ("Aguirre") (collectively, "Plaintiffs")[1] and their attorneys seek an order approving Class Counsels' application for attorneys' fees in the amount of $3,666,666.67 (equal to 33 1/3% of the gross settlement amount of $11 million), reimbursement of costs in the amount of $58,735.15 and representative service payments in the amount of $10,000 to each Plaintiff. This request was set forth in the Notice of Class Action Settlement mailed to all Class Members.[2]

The preliminarily approved settlement requires that Defendants pay an $11 million common fund for resolution of this case. Class Counsel worked tirelessly to achieve the $11 million Settlement. As will be explained in the subsequently filed Motion for Final Approval of Settlement, this Settlement amount is adequate, fair and reasonable. This current Motion will rather focus on Class Counsel's request for attorneys' fees and costs and the representative service payments. As detailed herein, numerous courts, including this Court, have awarded attorneys' fees in the amount of 33 1/3% of the common fund in class actions notwithstanding the Ninth Circuit's 25% of the common fund "benchmark."

Plaintiffs respectfully submit that the fee request and upward adjustment to the benchmark sought here is justified not only due to the benefits achieved, but also because of the significant work performed in the *Dynabursky Action*, *Babeshkov Action*, and the *Aguirre Action* which ultimately brought the Actions to the successful resolution that Plaintiffs and Class Counsel achieved. This case is strikingly similar to this Court's rulings in *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1209-10 (C.D. Cal. 2014) and *Lee v. JPMorgan Chase*, Case No. 8:13-cv-00511-JLS-JPR (C.D. Cal. April 28, 2015) granting upward adjustments from the 25% benchmark to 1/3 of the common fund. Each of the Actions were extremely contested and vigorously litigated at every stage. A brief summary

---

[1] As discussed in the Motion for Preliminary Approval, the proposed settlement includes settlement of this *Dynabursky Action* as well as the California State Court litigations of *Babeshkov v. AlliedBarton*, Los Angeles Superior Court Case No. BC388257 (the "*Babeshkov Action*"), and *Aguirre v. AlliedBarton*, Riverside Superior Court Case No. RIC 1407638 (the "*Aguirre Action*") (collectively the *Dynabursky Action*, the *Babeshkov Action* and the *Aguirre Action* are referred to as the "Actions").

[2] As set forth in the Joint Stipulation of Class Settlement and Release ("Settlement Agreement") of the parties, Defendants AlliedBarton Security Services, LP and Allied Barton Security Services, LLC ("Defendants") (Defendants and Plaintiffs collectively referred to as the "Parties") do not object to the requests sought herein.

of the litigation history of the Actions show how much work Class Counsel put into the Actions which culminated in the proposed settlement:

- Defeating Defendants' Motion to Stay in the *Dynabursky Action*;
- Filing and obtaining a significant Class Certification for over 20,000 employees;
- Opposing Defendants' Motion for Leave to Amend Their Answer;
- Fully briefing Dynabursky's Motion for Leave to File First Amended Complaint;
- Defeating Defendants' Motion for Reconsideration of this Court's Order Granting Class Certification;
- Defeating Defendants' FRCP 23(f) Interlocutory Appeal of this Court's Order Granting Class Certification;
- Fully briefing Defendants' Motion for Partial Summary Judgment on Plaintiff's rest break claim;
- Briefing the issue of post-certification class notice;
- Briefing other various motions including motion to abate, motion for complex designation, and demurrer; and
- Engaging in extensive discovery and investigation, including defending Dynabursky's deposition, conducting the FRCP 30(b)(6) witness depositions, witness interview, substantial written and document discovery including .more than 32,000 pages of documents.

As the Court can see by the summaries of time submitted in conjunction with this Motion and the docket in the *Dynabursky Action*, the Actions were heavily litigated by the Parties.  Further, all Actions faced significant risk.  In the *Babeshkov Action* for example, Plaintiff Babeshkov and his counsel decided to continue to pursue a class case against Defendants despite a then-recent order denying class certification in another action against Defendants on similar issues.  Despite this risk, counsel and Plaintiff in the *Babeshkov Action* moved forward with the claims and prosecuting Defendants for the alleged violations.  Ultimately, it is through the inclusion of the *Babeshkov Action* into the proposed settlement that allows Class Members between the years 2004-2008 to benefit from the global resolution of the Actions. Moreover, all of the Actions faced substantial risk with the uncertainty that existed with respect to many facets of the law at issue.  For example, stemming back to when the *Babeshkov Action* was filed in 2008 to the present time, the law has been in flux with respect to matters as meal and rest periods, wage statements, certification of same, and PAGA.  Even when class certification was briefed and submitted to this Court in the *Dynabursky Action*, substantial uncertainty existed with respect to the law on class certification of California's meal and rest period claims, as *Abdullah v. U.S. Sec. Assoc.'s, Inc.*, 731 F.3d 952 (9th Cir. 2013), and *Faulkinbury v. Boyd & Assocs., Inc.*, 216 Cal. App. 4th 220 (2013), were not issued until after class certification had been fully briefed.  Indeed, this Court stayed the *Dynabursky Action* pending the Ninth Circuit's decision in *Abdullah*.  Thus, Plaintiffs and Class Counsel faced substantial risk depending on the outcome of

pivotal cases including *Brinker v. Superior Court, Abdullah* and *Faulkinbury*.  Notwithstanding these risks, Class Counsel assumed all of the risk by investing substantial time and financial resources in the Actions.

For similar reasons, the service payments are also justified for each of the Representatives.  Each named plaintiff Representative took substantial risk by pursuing claims against an employer (let alone one of the largest security guard companies) where the outcome was not guaranteed.  Each Plaintiff put in substantial amounts of time into the cases and opted to pursue claims not on an individual basis but on behalf of other security guards in California so that others could reap the benefits of Plaintiffs standing up for their rights.  Additionally, each of the Representatives agreed to a general release of individual claims against Defendants which is much broader than that entered into by Class Members.  The service payments are in consideration of this additional release.

Finally, the $58,735.15 in costs incurred in this case are reasonable, as reflected in the Declarations of Class Counsel.  Further, the law and the Settlement Agreement expressly permit the recovery of litigation costs.

## II.   HISTORY OF THE ACTIONS

From the very inception, the Actions have been heavily litigated by all Parties, including substantial motion practice and discovery, particularly as it included various motions, arguments, and discovery that are not typical of normal class action litigation and is more unique to the security guard industry.

### A.   The *Dynabursky* Case Was Heavily Litigated by Both Parties

On December 21, 2012, Dynabursky filed his class action lawsuit for meal and rest period violations.  On February 5, 2013, this Court issued an Order to Show Cause re Subject-Matter Jurisdiction.  (Dkt. No. 11).  On February 18, 2013, Dynabursky filed his Response to the Court's Order to Show Cause, which included briefing as to why this Court had subject-matter jurisdiction.  (Dkt. No. 12).  After Dynabursky filed his Response, this Court discharged the Order to Show Cause, resulting in this Court retaining jurisdiction.  (Dkt. No. 13).

On February 22, 2013, Defendants filed their Motion to Stay Dynabursky's case based on the abstention doctrine due to the existence of other similar pending litigation, such as the *Babeshkov* case.  (Dkt. No. 14).  On March 8, 2013, Dynabursky filed his Opposition to the Motion for Stay.  (Dkt. No.

15).  On March 27, 2013, this Court denied Defendants' Motion for Stay.  (Dkt No. 22).  Thereafter, the Parties engaged in significant discovery, including two (2) separate FRCP 30(b)(6) depositions of Defendant, the deposition of Plaintiff Dynabursky, and the production of Defendant's policies and practices.  (Declaration of Larry W. Lee ("Lee Decl.") ¶ 2).

On March 26, 2013, Dynabursky filed his Motion for Class Certification.  (Dkt. No. 18).  Defendant opposed Dynabursky's Motion and submitted 76 declarations in support.  (Dkt. No. 26).  As such, Dynabursky had to respond to the factual and legal claims made by Defendants, including responding and objecting to the 76 declarations.  Indeed, Dynabursky submitted evidentiary objections consisting of 328 pages, a reply brief, and a supplemental request for judicial notice.  (Dkt. Nos. 29-32).  Further, in connection with the Motion for Class Certification, Dynabursky submitted notices of new authority of *Faulkinbury v. Boyd & Assocs., Inc.*, 216 Cal. App. 4th 220 (2013), *Leyva v. Medline Indus.*, 716 F.3d 510 (9th Cir. 2013), and *Bluford v. Safeway, Inc.*, 216 Cal. App. 4th 864, 871 (2013).  (Dkt. Nos. 49 & 51).  On May 14, 2013, Dynabursky also filed an *Ex Parte* Application to submit supplemental briefing in support of class certification.  (Dkt. No. 43).  Thus, the class certification briefing already significant and extensive at this point.  Moreover, an extensive part of the class certification briefing dealt with Defendants' argument that it had previously prevailed in defeating class certification on an identical claim before the San Francisco Superior Court, and the applicability of that ruling to Dynabursky's class certification motion.  (Lee Decl. ¶ 3).  Indeed, this is one of those novel arguments that do not normally appear in class action litigation, which required significant research and briefing.

Further, during the midst of the class certification briefing, Defendants also sought leave to amend their answer, which Dynabursky opposed.  (Dkt. Nos. 24 & 28).  This took further significant briefing.  On May 7, 2013, this Court granted Defendants' Motion for Leave.  (Dkt. No. 40).

Thereafter, on June 7, 2013, the Parties appeared before this Court for oral argument on the Motion for Class Certification.  (Dkt. No. 52).  On July 22, 2013, this Court stayed this matter pending the Ninth Circuit's final decision in *Abdullah v. U.S. Sec. Assoc.'s, Inc.*, 731 F.3d 952 (9th Cir. 2013), which addressed the standard for class certification of California on-duty meal and rest period claims.  (Dkt. No. 53).  On October 11, 2013, Defendants filed their Status Report regarding *Abdullah*.  (Dkt. No. 57).  Dynabursky filed his Objection to Defendants' Report that same day.  (Dkt No. 58).  On

4

October 22, 2013, this Court struck Defendants' Status Report pursuant to Dynabursky's Objection and ordered Dynabursky to file supplemental briefing on *Abdullah*.  (Dkt. No. 62).  Accordingly, on November 4, 2013, Dynabursky filed his Supplemental Brief addressing *Abdullah* and its impact on this case.  (Dkt. No. 63).

On November 7, 2013, Dynabursky also sought leave to amend to file his First Amended Complaint, which was fully briefed by the Parties.  (Dkt. Nos. 65-68).  This Court denied Dynabursky's Motion.  (Dkt. No. 69).

On January 29, 2014, this Court issued its Order Granting Class Certification in Part (Doc. No. 71), in which it certified Plaintiff's meal and rest period claims, as well as attendant wage statement claims.  This resulted in the certification of ***over 20,000*** class members, which is a significant amount in the world of wage/hour class actions.

On February 12, 2014, Defendants filed a Motion for Reconsideration of this Court's Order Granting Class Certification.  (Dkt. No. 75).  On March 28, 2014, Plaintiff filed his opposition and supporting documents, as well as evidentiary objections.  (Dkt. Nos. 78 & 79).  On April 24, 2014, this Court denied Defendants' Motion for Reconsideration.  (Dkt. No. 82).

Pursuant to the Court's Order Granting Class Certification, the Court ordered the Parties to disseminate opt-out notices to class members.  Not surprisingly, the Parties had disputes over the class notice and submitted briefing to the Court on their dueling notices.  (Dkt. Nos. 77 & 83).  On May 21, 2014, the Court issued its Order on Class Notice directing the Parties to submit a revised class notice, which the Parties filed on June 4, 2014.  (Dkt. Nos. 84 & 85).  After the Parties submitted additional revisions to the notice, on June 6, 2014, the Court finally approved the Parties' revised class notice.  (Dkt. Nos. 87 & 88).  On July 11, 2014, class notice was sent to approximately 22,000 class members.  (Lee Decl. ¶¶ 2, 4).  The $19,000 in administration costs were paid by Dynabursky's counsel.  (*Id.*)

As a result of the issuance of the class notice, Dynabursky's counsel received hundreds of telephone calls from class members inquiring about the lawsuit.  (Lee Decl. ¶¶ 2, 9; Declaration of Dennis S. Hyun ("Hyun Decl.") ¶ 3; Declaration of Edward W. Choi ("Choi Decl.") ¶ 6).  Class counsel also conferred with investigators from the U.S. Department of Labor regarding similar allegations that were made in the case.  (Choi Decl. ¶ 9).  As each class member was deemed a client by virtue of the class certification, each call was responded to by Dynabursky's counsel.  (Lee Decl. ¶¶

2, 9; Hyun Decl. ¶ 3; Choi Decl. ¶ 9).

Thereafter, on May 8, 2014, Defendants filed their Petition for Permission to Appeal pursuant to FRCP 23(f), which Dynabursky opposed on May 19, 2014. (Lee Decl. ¶ 2). On August 22, 2014, the Ninth Circuit denied Defendants' Petition. (*Id.*)

Then, on September 29, 2014, Defendants then filed their Motion for Partial Summary Judgment. (Dkt. Nos. 90-94). On October 10, 2014, Dynabursky filed his opposition papers, and on October 17, 2014, Defendants filed their reply brief. (Dkt Nos. 95 through 98). While Defendants' Motion for Partial Summary Judgment was pending, the Parties (along with Babeshkov and Aguirre) agreed to jointly attend a private mediation with well respected employment mediator Steve Serratore, Esq., which was held on January 9, 2015. (Lee Decl. ¶¶ 5-6; Hyun Decl. ¶ 4; Choi Decl. ¶ 7). As such, the Parties stipulated to continue the hearing on the fully briefed Motion for Partial Summary Judgment, which the Court approved. (Dkt. Nos. 99 & 100).

However, on January 5, 2015, immediately before the mediation, Defendants filed their Motion for Decertification of the Class. (Dkt. No. 101). Dynabursky's counsel reviewed the Motion for Decertification and began researching and preparing a response in case the mediation was unsuccessful. (Lee Decl. ¶ 2; Hyun Decl. ¶ 4; Choi Decl. ¶ 7).

As the Court can see from the docket alone, the *Dynabursky* Case has been heavily and intensely litigated at every stage over 3 years (4 years including the settlement proceedings). Throughout the litigation process, Dynabursky's counsel also engaged in discovery, including conducting the FRCP 30(b)(6) deposition, defending Dynabursky's deposition, as well as written discovery and reviewing documents. (Lee Decl. ¶ 2; Hyun Decl. ¶¶ 2-4; Choi Decl. ¶¶ 3-9).

**B.    The *Babeshkov* and *Aguirre* Cases Were Heavily Litigated by the Parties**

In April 2008, Plaintiff Babeshkov filed a wage and hour putative class action in Los Angeles Superior Court alleging unlawful meal and rest period practices due to Defendants policies and practices with respect to on-duty breaks. In his Complaint, Babeshkov alleged that Defendants violated California meal and break laws as well as overtime laws due to off-the-clock work performed as a result of unlawful meal and rest breaks. (Hawkins Decl. ¶7). In summary, the claims stemmed in part from the theory that the "on-duty" meal period agreement (which is subject to common wide proof ) is unlawful under California law and that overtime off the clock claims stemmed from in-valid on duty

meal periods.  Through Babeshkov's Complaint, Babeshkov filed on behalf of all security guards who were employed by Defendants in the State of California at any point since 2004.  *Id.*  Prior to the filing of the Complaint counsel for Babeshkov commenced factual and legal investigations into the claims including conducting witness interviews, document analysis, and extensive legal research into the complex and novel issues involving overtime and break claims the security industry.  *Id.*  A variety of law and motion work occurred at the early stages of the *Babeshkov Action* including an *ex parte* for coordination, Defendants' demurrer and an abatement motion.   After briefing on the abatement motion, the Court granted Defendants' request to stay the action as a result of a then-pending putative class action case against Defendants in the San Francisco Superior Court (the *Popek* case)  *Id.*  In June 2011, the San Francisco Superior Court denied class certification in the *Popek* case.  Consequently, the court-imposed stay in the *Babeshkov Action* was ultimately removed and the parties commenced litigation again.   *Id.*   In June 2014, Plaintiff Aguirre filed a PAGA enforcement action against Defendant AlliedBarton Security Services, LP in Riverside Superior Court for civil penalties for meal period, rest period and recovery period violations.   *See* James Hawkins Declaration in Support of Preliminary Approval, Exhibit A.  Aguirre filed PAGA enforcement action claims so that he could seek wholly different remedies - civil penalties - than those sought by class action cases including *Dynabursky* and Babeshkov.  In doing so, Aguirre was "stepping into the shoes" of the State of California.  Ultimately, while Aguirre seeks entirely different remedies than the *Dynabursky* case – civil penalties as opposed to unpaid wages - the Riverside court abated the case pending resolution in the *Dynabursky* case.  Ultimately in January 2015, the *Dynabursky Action*, the *Babeshkov Action* and the *Aguirre Action* resolved at mediation through a global settlement, subject to this Court's approval. (Hawkins Decl. ¶17; Robbins Decl. ¶15; Richard Decl. ¶19).  All of the litigation, discovery, research, analysis and factual investigation conducted in these actions were instrumental in bringing the Actions to a stage they could be responsibly mediated and settled. (Hawkins Decl. ¶15; Robbins Decl. ¶13; Richard Decl. ¶17). The following summarizes the work performed in these actions.

Babeshkov/Aguirre Counsel conducted factual and legal research into claims and defenses for both the *Babeshkov Action* and the *Aguirre Action* in support of the complaints filed in each of these actions and the notice letter under the PAGA filed in the *Aguirre Action*.  Each of the plaintiff representatives provided useful information during the claims drafting process. (Hawkins Decl. ¶6;

7

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF ATTORNEYS' FEES AND COSTS AND REPRESENTATIVE SERVICE PAYMENTS; AND MEMO. OF POINTS AND AUTHORITIES IN SUPPORT

Robbins Decl. ¶6; Richard Decl. ¶11). Motion practice, including that on Defendants' demurrer and motions to abate and motions concerning the complex designation of the actions, occurred in both the *Babeshkov* and the *Aguirre Actions*. *Babeshkov/Aguirre* Counsel spent extensive time and resources on these motions. (Hawkins Decl. ¶ 8; Robbins Decl. ¶8; Richard Decl. ¶12).

Extensive time and resources were also necessarily spent by *Babeshkov/Aguirre* Counsel on conducting intensive factual investigation and legal research and analysis, and strategizing regarding same on numerous complex and novel issues including that pertaining to: Defendant's Answer to the *Babeshkov* Complaint; case developments; case law and statutory developments including that on certification, nature of work defense, on-duty break authority, and security guard decisions on meal and rest break claims; various related case and similar cases; certification denial in *Popek* including and collateral estoppel impact. (Hawkins Decl. ¶9; Robbins Decl. ¶9; Richard Decl. ¶ 13).

Extensive time and resources were also devoted to discovery matters. Multiple sets of written discovery were exchanged. Wide-ranging meet and confer efforts pertaining to discovery occurred including those on: (i) the negotiation of an agreed-to sampling of relevant time and pay records of class members based on sites and areas which ultimately avoided a motion to compel on the issue; (ii) the negotiation of a Belaire notice to obtain witness contact information; (iii) the negotiation of an agreed-to protective order; (iv) the negotiations surrounding redactions to documents made by Defendants and instilling a process for providing unique identifiers for redacted documents; (v) the request for production of documents Defendants asserted were confidential and/or sensitive; (vi) PMQ depositions (vii) deficient discovery responses by Defendants. The Parties in the *Babeshkov* and *Aguirre Actions* held dozens of telephone conferences and exchanged voluminous correspondence concerning difficult and unique discovery issues posed by an action in the security industry, including: (i) pay/time/scheduling record samplings for a class of this size; (ii) the search for and production of electronically stored information; (iii) the search for and redaction of documents concerning the security protocols (such as Post Orders) of third party clients of Defendants; and (iv) the search for and production of confidential services agreements between Defendants and clients that Defendants claimed were the property of their clients and not subject to production. Given the magnitude of discovery matters, research was conducted into the appointment of a discovery referee. However, after extensive efforts spanning several years, *Babeshkov/Aguirre* Counsel secured extensive relevant

8

discovery consisting of the aforementioned documents as well as general policy and procedure documents in place during the relevant periods.  *Babeshkov/Aguirre* Counsel also conducted witness interviews.   In total, the discovery acquired from Defendants exceeded 32,000 pages of relevant documentation.  *Babeshkov/Aguirre* Counsel expended significant time and resources analyzing the documentation in preparation for depositions, certification, summary judgment and trial in addition to conducting witness interviews, and utlimatley settlement evaluation in the Actions. (Hawkins Decl. ¶10 ; Robbins Decl. ¶10; Richard Decl. ¶14).

 *Babeshkov/Aguirre* Counsel additionally extensively investigated and researched the *Dynabursky* and the impact of same on the state class and PAGA claims including the certification ruling, and the various motions in that action including the summary judgment motion, motion for reconsideration, interlocutory appeal, motion for decertification). This research included analysis of rulings, motions, res judicata, collateral estoppel and intervention.   Conferences were held with the counsel in the *Dynabursky Action* and defense counsel, ultimately leading to a global mediation and settled eventually. (Hawkins Decl. ¶12; Robbins Decl. ¶12; Richard Decl. ¶16). *Babeshkov/Aguirre* Counsel also attended to various case management matters in both the *Babeshkov Action* and the *Aguirre Action* such as the drafting and filing of status statements, case management statues, stipulations, notices and meet and confer efforts regarding same; attending hearings; and analyzing incoming orders.  (Hawkins Decl. ¶11; Robbins Decl. ¶11; Richard Decl. ¶15).

### C. Mediation and Settlement Efforts

 In connection with the mediation, Defendants provided to Plaintiffs detailed data on the damages for the Class.  (Lee Decl. ¶¶ 5-6).  Prior to the mediation, Class Counsel spent significant time analyzing this data and in conjunction with the discovery performed to date including documentary evidence and witness statements, and preparing a detailed mediation brief containing legal, factual, and damage analysis. After an entire day of mediation that last well into the night, the Parties were able to reach a global settlement and entered into an MOU.  (*Id.*)  However, much additional necessary work was further expended subsequent to the mediation.  In particular, significant time was spent documenting the settlement and negotiating terms in a 31 page detailed settlement agreement and class notice.  Further, necessary time was expended on researching possible claims administrators who could handle a large class size and obtaining and negotiating bids from same.  Moreover, as the Actions all

resided in completely different jurisdictions and venues, the Parties discussed and researched the various possibilities of globally settling these three (3) Actions in one venue. (Lee Decl. ¶ 6). In that respect, the Parties initially proposed staying the three separate matters and having the settlement globally approved by an arbitrator. (Dkt Nos. 104 through 114). As the docket itself reflects, this issue was also significantly briefed to this Court. Ultimately, this Court rejected the Parties "arbitration" proposal. *Id.* As a result thereof, the Parties agreed, for purposes of settlement only, that the Actions be consolidated and settled through this current Court, and which this Court approved on March 31, 2016. Finally, after the Settlement Notices were issued to the Class, countless Class Members have contacted Class Counsel regarding various issues pertaining to the settlement. (Lee Decl. ¶¶ 2, 9; Hyun Decl. ¶ 3; Choi Decl. ¶ 6; Hawkins Decl. ¶19; Robbins Decl. ¶17; Richard Decl. ¶21).

## III.   ATTORNEY FEE AWARDS IN COMMON FUND CASES
### A.   The Award Requested

The fee sought relates to all efforts expended by Class Counsel for the complete handling of the class/representative Actions, including any additional work remaining to be performed by Class Counsel in securing final Court approval of the Settlement, and later following through to ensure that the Settlement is fairly administered and fully implemented. As shown above, a significant amount of work on the part of Class Counsel went into achieving this resolution. Based upon the factors relating to approval of percentage of the fund fee awards, class counsel submit that the effort and result justify the requested percentage fee requested. As a secondary "cross-check" to the percentage of the common fund award, Class Counsel are also providing this Court with time and task charts in their declarations, which break down the tasks and time spent by each firm, so that the Court can conduct a lodestar analysis.

Judge Marilyn Patel remarked, in an oft-quoted and prescient ruling, that in essence the task of tracking the tasks was itself a potential morass of its own making and, thus, favored the application of the percentage of the fund approach. *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1375 (9th Cir. 1989). Notwithstanding Judge Patel's observation, a time and task chart is offered here because it shows in this case that Class Counsel's lodestar is $1,976,565.25, which approximates 33 1/3% of the common fund with a multiplier of 1.85. As discussed in more detail below, under the common fund, or lodestar approach, Class Counsel's fees are reasonable and should be awarded.

### B.   The Percentage of the Fund Approach

The U.S. Supreme Court consistently has recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Elec. Auto-Lite Co*., 396 U.S. 375 (1970). The purpose of this doctrine is largely to avoid unjust enrichment, by spreading the litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone. It provides that when a litigant's efforts create or preserve a fund from which others derive benefits, the litigant may require the passive beneficiaries to compensate those who created the fund. Every United States Supreme Court case that has considered the award of attorney's fees under the common fund doctrine has determined those fees as a percentage of the recovery. *See, e.g.*, *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991) (citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984)) (noting that the percentage of recovery method is the appropriate method to award attorney's fees in common fund cases); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165 n.2 (1939); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 128 (1885); *Internal Improvement Fund Trs. v. Greenough*, 105 U.S. 527, 532 (1881). Both California state and Ninth Circuit decisions have embraced this doctrine. *Vincent v. Hughes Air West, Inc*., 557 F.2d 759, 769 (9th Cir. 1977). The Ninth Circuit has held that the common fund doctrine applies when: (i) "the class of beneficiaries is sufficiently identifiable; ([ii]) the benefits can be accurately traced[;] and ([iii]) the fee can be shifted with some exactitude to those benefiting." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) (hereinafter "*Paul*"). These criteria are "easily met" when "'each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum [settlement] recovered on his behalf."' *Id.* at 271 (*citing Van Gemert*, 444 U.S. at 479). Under the three factors set forth in *Paul*, the common fund doctrine applies here. First, the Class of beneficiaries is identifiable. Defendants identified each of the Class Members by examining its business records mandated by law to be maintained. Second, the benefits consist of monetary payments to the Class Members and, therefore, can be easily and accurately traced. Third, the fee can be shifted with exactitude because Class Counsel are claiming a specific, lump-sum percentage of the total settlement amount to be paid to Class Members.

Seeking a fee based on a percentage of the gross recovery, which is what Class Counsel is seeking here, is appropriate and even desirable in cases like this. *See* Newberg on Class Actions,

Fourth Edition, vol. 4, p. 556, §14.6 (noting that percentage of the fund awards are preferable because they align the interests of the attorney with the client, as the attorney is not incentivized to bill unnecessary hours to generate a greater fee); *Boeing*, 444 U.S. at 478.  Unlike the lodestar method which can encourage class counsel to devote unnecessary hours to generate a substantial fee, under the POR [percentage of recovery] method, the more the attorney succeeds in recovering money for the client, and the fewer legal hours expended to reach that result, the higher dollar amount of fees the lawyer earns.  Thus, one of the primary advantages of the POR method is that it is thought to equate the interests of class counsel with those of the class members and encourage class counsel to prosecute the case in an efficient manner.

It is clear that the Settlement, in creating a non-reversionary fund of $11 million results in a substantial common fund.  Under the Common Fund Doctrine, courts have historically and consistently recognized that class litigation is increasingly necessary to protect the rights of individuals whose injuries and/or damages are too small to economically justify individual representation.  This case is precisely such a case.  California law also encourages attorneys to undertake the enormous risks of time and money necessary to vindicate the public interest, or to protect the public policies behind the wage and hour laws.  To fulfill this policy, California law provides that attorney fee awards should be equivalent to fees paid in the legal marketplace to compensate for the result achieved and risk incurred.  *See Lealao v. Beneficial Cal., Inc.*, 82 Cal. App.4th 19, 47 (2000). Accordingly, in the determination of a reasonable common fund fee award, courts award fees to serve as economic incentive for lawyers to bring class actions in order to achieve increased access to the judicial system for meritorious claims and to enhance deterrents to wrongdoing.  *See* A. Conte, *Attorney Fee Awards*, 2nd Ed. 1993, 104, p.6.

Here, as the record shows, the Parties engaged in extensive and exhaustive litigation in the Actions, which included engaging in extensive discovery and meet and confer efforts to obtain same, Dynabursky obtaining class certification, the full briefing of various motions including two motions for leave to amend, a demurrer, a motion for complex designation, Defendants' appeal, motions for stay, and motion for partial summary judgment. Class Counsel pursued the Actions on behalf of the representative Plaintiffs and the Class, and achieved a significant financial result for the Class.  It is respectfully submitted that the result more than justifies the fee requested.  Thus, the percentage of fees should be calculated based upon the entire settlement amount.

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF ATTORNEYS' FEES AND COSTS AND REPRESENTATIVE SERVICE PAYMENTS; AND MEMO. OF POINTS AND AUTHORITIES IN SUPPORT**

### C.      Evolution of the Percentage Method

Ever since the Common Fund Doctrine found its genesis in *Trustees v. Greenough*, 105 U.S. 527 (1881), courts often awarded fees on a percentage basis.  Following the 1966 amendments to Rule 23, the size of settlement funds began increasing significantly and the fees awarded pursuant to the percentage method, taken out of context, were criticized by commentators and the general press.  In 1973, the revision for the *Manual for Complex Litigation* proposed that all common fund fee awards be based on time reasonably expended on the action.  This concept was then embraced in *Lindy Bros. Bldrs., Inc. of Phila. v. American R. & R. San Corp.*, 487 F.2d 161 (3d Cir. 1973), and *Lindy II*, 540 F.2d 102 (3d Cir. 1976).  Thereafter, a large number of courts adopted *Lindy*'s rationale, and courts generally began awarding fees based on the actual time expended (the lodestar) in conjunction with a multiplier of between 2 and 4.  *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224 (2001) (noting that courts using the lodestar method to calculate attorney fees awards in class actions typically apply multipliers in the range of 2 to 4); *Fadhl v. Police Dept., City & County of San Francisco*, 1983 WL 514 (N.D. Cal. May 12, 1983) (finding multiplier of 2.5 to be appropriate).

Since *Blum v. Stenson*, 465 U.S. 886 (1984), where the Supreme Court approved a percentage of the fund as being an appropriate fee award, courts have increasingly rejected the lodestar approach.  This trend recognizes the fact that compensating class counsel on a percentage basis (out of a common fund) makes good sense because 1) it is consistent with the private marketplace where contingent fee attorneys are customarily compensated on such a basis; 2) it aligns the interests of class counsel and absent class members in achieving the maximum possible resolution of the case; and 3) it augers for the most efficient and expeditious resolution of the litigation by providing an incentive for early, yet reasonable, settlement.  Class Counsel respectfully submit that the award in this case meets all those criteria, such that it should be made on a percentage basis.

### D.      The Attorneys' Fees Requested by Class Counsel Are Well Within the Range of Fees Awarded in Comparable Cases

The Ninth Circuit has recognized a "ground swell of support for mandating a percentage-of-the-fund approach in common fund cases."  *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming attorney's fee of 33% of the recovery); *Morris*, 54 F. App'x at 663 (affirming fee award of 33% of the recovery).  Although the

13

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF ATTORNEYS' FEES AND COSTS AND REPRESENTATIVE SERVICE PAYMENTS; AND MEMO. OF POINTS AND AUTHORITIES IN SUPPORT

Ninth Circuit has typically found that 25% of the common fund is "benchmark," numerous courts in the Ninth Circuit have awarded higher amounts. *See Stetson v. West Publishing Corp.*, Case No. 13-57061, at *11 (9th Cir. May 11, 2016). The twenty-five percent benchmark may be adjusted upward or downward depending on the circumstances presented by the particular case. Indeed, the Ninth Circuit and district courts therein have routinely permitted recovery in the amount of 33.33%, 40% and even up to 50% of the common fund. *See, e.g.*, *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (listing Ninth Circuit cases).

For example, in ***Vandervort***, this Court awarded 33 1/3% of the common fund in granting final approval of the class settlement. *Vandervort*, 8 F. Supp. 3d at 1209-10 (C.D. Cal. 2014). In reaching this conclusion, this Court noted that the amount of time and costs invested by the plaintiffs' counsel, as well as the "unprecedented nature of the class certified and the "exceptional result" warranted an upward departure from the benchmark:

> The Court finds that the unprecedented nature of the class certified and the settlement reached for the class present an exceptional result warranting an upward departure from the benchmark.... The Court further notes Defendant's vigorous opposition to this case, including its interlocutory appeal of the Court's class certification order as well as its motion for summary judgment, which raised numerous significant defenses to the claims presented.

*Id.* (Citing *Vizcaino v. Microsoft Corp.*, 290 F. 3d 1043, 1048 (9th Cir. 2002) (finding of exceptional results warranted where "counsel pursued [the] case in the absence of supporting precedents")). This Court also noted that, while not dispositive, the plaintiffs' counsel's investment of $50,000 in costs in the case also supported the request for attorneys' fees. *Id.*

Here, Class Counsel submits that class certification obtained in Dynabursky was of an "unprecedented class" and the work performed in all the Actions appears to greatly exceed the amount of work performed in *Vandervort*. Again, at the inception of the Actions, which started with *Babeshkov* in 2008, there was no dispositive authority regarding class certification of meal and rest break claims with respect to security guards. Moreover, there was no authority until 2012, when the California Supreme Court held in *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012), that an employer is not ensure that employees are taking meal and rest periods. In other words, at the time of Dynabursky's class certification briefing, there was no controlling authority directly on-point regarding certification of meal and rest period claims with respect to the security guard industry.

Further, prior to the filing of the *Babeshkov and Dynabursky Actions*, Defendants had prevailed in defeating class certification in another case based on the same claims in the San Francisco Superior Court. Thus, it was clear that all Plaintiffs faced a significant uphill battle from the very beginning.

Indeed, this Court stayed the ruling on class certification pending the Ninth Circuit's decision in *Abdullah v. U.S. Sec. Assoc.'s, Inc.*, 731 F.3d 952 (9th Cir. 2013). It was only when *Abdullah* was finally issued and briefed that this Court granted class certification in the *Dynabursky Action*. Further, prior law on certification of meal and rest periods actually weighed against class certification. Specifically, Defendants repeatedly cited the California Court of Appeal's old opinion in *Faulkinbury v. Boyd & Assoc., Inc.*, 185 Cal. App. 4th 1363 (2010). The Court in its prior opinion held that certification of a security guard class for meal and rest period violations was inappropriate because of the lack of common issues. After Dynabursky briefed his Motion for Class Certification, the Court of Appeal issued its new decision in *Faulkinbury v. Boyd & Associates, Inc.*, 216 Cal. App. 4th 220 (2013), in which the Court held that class certification was warranted in a case involving the legality of a security guard employer's company-wide policies and practices with respect to meal and rest breaks, including its on-duty meal break policy.

In addition to just the class certification risks, to this very date, there is still a very real risk associated continued litigation of the Actions including through appeals. For example, there is risk that Plaintiffs' on-duty meal break claims may not prevail at the end of the day. Again, there is no case law on point with respect to the legality of on-duty meal breaks in the security guard industry. Had the Actions proceeded to trial (or summary judgment), and determined that the nature of the work qualified for the on-duty meal break exception, Plaintiffs will have no case. Similarly, as to the rest break claim, Plaintiff Dynabursky's claim was entirely predicated on Defendants' "no sleep" policy. Had the trier of fact or this Court found that such a policy did not interfere with the class members' rest breaks, then the rest break claim would also be rejected. Thus, there were significant risks in this case, and Class Counsel submits that they assumed the risks of both class certification and the merits in this case when the authority on this matter was not settled and was in fact, at times against Plaintiffs.

Further, as in *Vandervort*, Dynabursky's counsel engaged in extensive litigation, including briefing numerous motions and fighting Defendants' interlocutory appeal of this Court's Order granting class certification. Class Counsel also advanced substantial monies to fund this case. In

15

particular, Class Counsel have invested over $58,735.15, which exceeds the $50,000 noted by this Court in *Vandervort* as supporting a departure from the Ninth Circuit's benchmark.

Plaintiffs also submit that this Court's Order in *Lee v. JPMorgan Chase*, Case No. 8:13-cv-00511-JLS-JPR (C.D. Cal. April 28, 2015),[3] further supports an award of 33%. In *Lee*, a wage and hour class action, the parties heavily litigated that case over 18 months, including appeals to the Ninth Circuit. *Id.* at *10. Further, the *Lee* case was settled while the appeal was pending to the Ninth Circuit. *Id.* Notably, the *Lee* case was settled without "extensive formal discovery" and **before** class certification. *Id.* at *12-13. Nevertheless, this Court awarded 33% of the common fund as attorneys' fees. *Id.* at *15-16. The Court found that the risks of further litigation, including potential appeals, supported a departure from the 25% benchmark.

Here, as the Court knows, even more work was performed by Class Counsel than by the plaintiffs' attorneys in *Lee*. In *Lee*, the case was settled before class certification and before extensive formal discovery. On the other hand, in this case, the Actions have been litigated for over 8 years including extensive formal discovery, obtaining class certification, and engaging in extensive motion practice. Further, Defendant appealed the *Dynabursky Action* to the Ninth Circuit and would likely appeal again after the conclusion of the case had settlement not been reached. This would have undoubtedly led to more appeals. As such, Class Counsel submit that this case far exceeds the amount of work in *Lee* and, therefore, a departure is warranted to 33 1/3%.[4]

---

[3] In *De Leon v. ServiceLink, Inc.*, 2016 U.S. Dist. LEXIS 55662 (C.D. Cal. 2016), this Court awarded 25% of the common fund. *De Leon*, however, is easily distinguishable from Plaintiffs' case, in that *De Leon* was settled within 4 months of the case's removal to this Court. *Id.* at *2-3. Further, the plaintiffs' counsel in *De Leon* recognized that it was a "garden variety" wage and hour class action. *Id.* at *32. Here, unlike *De Leon*, this case was anything but a "garden variety" wage and hour class action. Again, the issues in the Actions were far from certain, as the law was changing throughout this case history since 2008. Most recently, the changing of the legal landscape is evidenced by this Court's stay of the *Dynabursky Action* pending the Ninth Circuit's ruling in *Abdullah*, as well as the California Court of Appeal's decisions in *Faulkinbury*. Moreover, unlike *De Leon*, this case did not settle early on, but took years of hard-fought litigation in the face of the changing legal landscape– over 8 years for the *Babeshkov Action*, approximately 2 years for *Aguirre Action*, and over 3 years for the *Dynabursky Action* with repeated attempts by Defendants to either decertify the class, or obtain a merit-based ruling dismissing or staying the claims.

[4] *See, e.g.*, *Kearney v. Hyundai Motor Am.*, No. SACV 09-1298-JST, 2013 WL 3287996, at *5-9 (C.D. Cal. June 28, 2013) (the Honorable Josephine Staton granted attorneys' fees and costs of $993,000 in class settlement involving recall of vehicles, without any immediate financial payout to the class); *Boyd v. Bank of Am. Corp.*, 2014 U.S. Dist. LEXIS 162880 at *22-*23 (C.D. Cal. Nov. 18, 2014) (awarded 1/3 of the common fund based on a 2.58 multiplier of the lodestar); *Birch v. Office Depot, Inc.*, No. 06CV1690 DMS (WMC), slip opin. (S.D. Cal. Sept. 28, 2007) (awarding a 40% fee on a $16 million break claim wage and hour class action); *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir.

16

### E.     The Percentage Awarded Should Mimic the Market

*Newberg on Class Actions*, Fourth Edition, vol. 4, p. 560, § 14.6 contains an interesting discussion of the concept of a market place analysis and why it is so valuable in determining a percentage award:

> The percentage method is consistent with and is intended to mirror practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients. As Judge Posner emphasized in *In re Continental Illinois Securities Litigations*, "[t]he object in awarding a reasonable attorney's fee...is to simulate the market...The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client." ... If named plaintiffs have agreed to pay a one-third contingent fee, that is powerful evidence of a reasonable fee. One of the best ways to demonstrate the value of counsel's work to the class is to review the consideration agreed to be paid by the named plaintiffs in their contracts. If the named plaintiffs have employed their counsel by contingent fee agreements that obligated them to pay one-third of the recovery, it would indeed be inequitable for the members of the class, who will enjoy the benefits of this settlement without incurring the risks of bringing the claim, to pay less than the named plaintiffs.

The complex and heavily litigated nature of this litigation, and its successful result lead to the clear conclusion that the fee request herein is reasonable.  In *Cambden I Condominium Association, Inc., v. Dunkel*, 946 F. 2d 768 (11th Cir. 1991), the court identified various factors to be considered in arriving at a common fund fee determination.  *See also Vizcaino v. Microsoft Corporation*, 290 F.3d 1043, 1048-50 (9th Cir. 2002) (discussing factors).  Each of the factors are met as evidenced by the submitted record and briefly addressed below.

---

1995) (affirming fee award equal to 33% of fund); *Cordy v. USS-Posco Indus.*, No. 12-CV-00553-JST, 2014 WL 212587, at *3 (N.D. Cal. Jan. 17, 2014) ("a proposed attorney's fee award of not more than 33% appears to be reasonable"); *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013) ("The Settlement Agreement's provision of $430,000 in attorneys' fees (33 percent of the total settlement amount), is fair and reasonable in light of the awards of attorneys' fees in similar wage-and-hour cases in this district."); *In re Heritage Bond Litigation*, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) (33 1/3% awarded); *Garcia v. Gordon Trucking, Inc.*, No. 1:10–CV–0324 AWI SKO, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) (court approving attorneys' fees in the amount of 33 percent of the common fund); *Benitez v. Wilbur*, No. 1:08–cv–01122 LJO GSA, Doc. No. 52 (E.D. Cal., Dec. 15, 2009) (awarding 33.3 percent of the benefit to the class in attorneys' fees); *Chavez v. Petrissans*, Case No. 1:08–cv–00122 LJO GSA, Doc. No. 89 (E.D. Cal. Dec. 15, 2009) (court approved awards of attorneys' fees of 33.3 percent of the common fund); *Romero v. Producers Dairy Foods, Inc.*, 2007 U.S. Dist. LEXIS 86270 (E.D. Cal. 2007) (33 1/3% awarded); *In re Heritage Bond Litigation*, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) (33 1/3% awarded); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492-93 (E.D. Cal. 2010) (33 1/3% awarded); *Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416 at *22-*23 (S.D. Cal. June 1, 2010) (33 1/3% awarded); *Rippee v. Boston Mkt. Corp.*, No. 05CV1359 BTM (JMA), slip op. (S.D. Cal. Oct. 10, 2006) (awarding a 40% fee on a $3.75 million wage and hour class action).

1.  <u>The time and labor required</u> - this is overwhelmingly established in this Motion, based upon the work involved, and the supporting attorney declarations and time charts submitted;

2.  <u>The novelty and difficulty of the questions involved</u> – as noted above, there were substantial risks to the Class and to Class Counsel.  These risks were compounded by the absence of directly applicable legal authority to both class certification and the merits on the security guard industry;

3.  <u>The skill requisite to perform the legal services properly</u> - this goes hand in hand with the first and second factors;

4.  <u>The preclusion of other employment by the attorney due to the acceptance of the case</u> - the case required and demanded extraordinary attorney time on both sides.  The result of this scheduling was that Class Counsel could have spent such time on numerous other matters while this litigation was ongoing;

5.  <u>The customary fee</u> – as discussed above, although the Ninth Circuit's benchmark or "customary" fee amount is 25% of the settlement fund, numerous courts, including this Court, have approved an upward departure to 33 1/3% where the Actions have been heavily litigated and good results are achieved for the Class in light of the risks.  Here, this case has been heavily litigated and the $11 million settlement should qualify as a very good result;

6.  <u>Whether the fee is fixed or contingent</u> - this matter was clearly contingent without any sort of fixed or guaranteed fees for Class Counsel;

7.  <u>Time limitation imposed by the client or the circumstances</u> – although the client did not impose any time limitations, Local Rule 23-3 certainly imposed a strict deadline to seek class certification.  Again, Dynabursky filed his Motion for Class Certification within Local Rule 23-3's 90-day deadline;

8.  <u>The amount involved and results obtained</u> – which is discussed above;

9.  <u>The experience, reputation and ability of the attorney</u> – as evidenced by the supporting declarations, Class Counsel has been designated and certified as class counsel in numerous other matters, including in the Central District;

10.  <u>The nature and length of the relationship with the client</u> - this does not apply; and

11.  <u>Awards in similar cases</u> – with respect to wage and hour class actions, similar cases were identified in the section above.

18

## IV.    THE LODESTAR CALCULATION "CROSS-CHECK"

It has been noted that it is sometimes helpful to courts to "cross-check" a percentage award by employing a lodestar with a multiplier analysis. While the lodestar method is generally considered inappropriate in a common fund case where real cash benefits (as opposed to coupons or non-monetary benefits) are made available to class members, its use can provide further validation of the appropriateness of the percentage award approach. *See In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 106 F. Supp. 2d 721 (D.N.J. 2000). Such is the case here. The declarations of Class Counsel evidence the fact that they devoted approximately 3,119 hours of time to this litigation to date. (Lee Decl. ¶ 8, Exh. A; Hyun Decl. ¶ 5, Exh. A; Choi Decl. ¶ 13, Exh. A; Hawkins Decl. ¶23, Ex, 1; Robbins Decl. ¶23. Ex. 1; Richard Decl. ¶¶27-28). These hours are summarized in the time and task charts that are attached to Class Counsel's declarations. And, to the extent that any argument is made that the time spent was duplicative, Class Counsel took measures to ensure there was minimal duplication of work within their own actions.[5] (Lee Decl. ¶ 7; Hyun Decl. ¶ 5; Choi Decl. ¶ 13; Robbins Decl. ¶21; Richard Decl. ¶25). More importantly, as recently noted by the Ninth Circuit in *Stetson v. West Publishing Corp.*, Case No. 13-57061, at *13 (9th Cir. May 11, 2016), "some amount of duplicative work is 'inherent in the process of litigating over time.'"

In addition, as explained above, Class Counsel expect to expend an additional 157 hours through the final approval hearing, including on matters such as preparing the Motion for Final Approval, travel to and attending the final approval hearing, and further conferring with class members regarding the case status. (Lee Decl. ¶ 9; Hyun Decl. ¶¶ 5-7; Choi Decl. ¶ 13; Robbins Decl. ¶23; Richard Decl. ¶ 27). Thus, Class Counsel will have expended 3,276 hours through final approval. Applying the various hourly rates of the law firms and lawyers who dedicated their efforts to this matter, a lodestar of $1,976,565.25 is established for the amount of work spent through final approval. (Lee Decl. ¶¶ 8-10; Hyun Decl. ¶¶ 5-7; Choi Decl. ¶ 13; Hawkins Decl. ¶23; Robbins Decl. ¶¶21-23; Richard Decl. ¶¶25-27). Specifically, based on the lodestar, Plaintiffs' counsel have expended a total of $1,976,565.25 in attorneys' fees. This does not include time spent on post-final approval matters such as overseeing the settlement process should final approval occur. The percentage award sought by

---

[5] Moreover, to the extent there is some overlap amongst attorneys in reviewing and making edits, identical to the way defense firms staff and handle cases, each attorney is assigned to handle a task and other attorneys review the work and provide edits and/or comments.

Class Counsel, if converted to the lodestar method, would entail minimal multiplier of approximately 1.85, clearly on the significantly low end of historically approved multipliers. Thus, as set forth in the Introduction to this motion, the fee application is supported whether by the cross-check lodestar/multiplier method discussed herein, or by the percentage of the common fund discussed in the preceding sections.

### A.      Plaintiff's Counsels' Lodestar Is Reasonable

The hourly rates employed by Class Counsel, as declared to in the attorney declarations, are reasonable. Courts have found that reasonable rates are those charged by private attorneys of comparable skill, reputation, and experience for similar litigation, as measure by the prevailing rates charged by corporate attorneys of equal caliber. *See Bihun v. AT&T Info. Sys.,* 13 Cal App. 4th 976, 997 (1993) (affirming award of $450 per hour in 1993). The background and experience of plaintiffs' counsel are fully set forth in the declarations filed in support of this Motion. The basic hourly rates listed for each firm are fair, and representative of the combination of years of experience and the clear successes they have had in the past in connection with class action litigation. The time and task charts summarize the total hours devoted to the matter by the various law firms, along with the hourly rates as set forth in the supporting declarations, and the total billed. (Lee Decl. ¶¶ 8-10, Exh. A; Hyun Decl. ¶¶ 5-7, Exh. A; Choi Decl. ¶ 13, Exh. A; Hawkins Decl. ¶23, Ex. 1; Robbins Decl. ¶23, Ex. 1; Richard Decl. ¶¶27-28).

As discussed in their supporting declarations, Class Counsel are a group of well-experienced litigators, including class action litigation. (Lee Decl. ¶¶ 12-15; Hyun Decl. ¶¶ 8-11; Choi Decl. ¶¶ 10-12; Hawkins Decl. ¶3; Robbins Decl. ¶¶3-4; Richard Decl. ¶¶3-8). Under California law, counsel are entitled to compensation for all hours reasonably spent on the matter. *Ketchum vs. Moses*, 24 Cal. 4th 1122, 1133 (2001). Reasonableness of hours is assessed by "the entire course of the litigation, including pretrial matters, settlement negotiations, discovery, litigation tactics, and the trial itself...." *Vo v. Las Virgenes Municipal Water Dist.*, 79 Cal. App. 4th 440, 447 (2000). In addition, the attached time and task charts clearly reflect the many hours which were necessarily spent on the case.

In the History of the Actions section above and in the accompanying attorney and Plaintiff declarations, the nature and extent of the proceedings held throughout the Actions are set forth in detail. Without repeating the same, it is incorporated herein. The total hours and billings thus generated are all

20

supported herein.  In sum, it is submitted that the reasonableness of Class Counsel's lodestar is manifest.  Accordingly, the question becomes whether the 1.85 multiplier suggested, which then yields a total lodestar billing roughly equivalent to the percentage of the common fund set forth above, is reasonable by marketplace standards.  As discussed below, Class Counsel submit that the requested multiplier is reasonable and consistent with other cases, including this Court's own opinion, *Vandervort*, 8 F. Supp. 3d at 1209-10.

### B.  The Lodestar Enhancement Is Reasonable

As the Supreme Court has explained, in determining the reasonableness of attorneys' fees "the most critical factor is the degree of success obtained."  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *see also Glendora Community Redev. Agency v. Demeter*, 155 Cal. App. 3d 465, 475 (1984). Here, Class Counsel succeeded resoundingly and unequivocally, in obtaining substantial relief for the class.

The application of a 1.85 multiplier is comparable to what a sophisticated client would have freely negotiated.  In a case such as the one at bar, where Class Counsel have taken substantial risk in bring the Actions, faced vigorous opposition from the defense, and been able to achieve a result that represents a substantial recovery, it is entirely appropriate to use a multiplier to enhance the lodestar claim of counsel.  *See In re Washington Pub. Power Supply Sys. Sec. Litig*., 19 F.3d 1291, 1299-300 (9th Cir. 1994) (noting that the use of multipliers in awarding fees encourages plaintiff's attorneys to assume the risks of contingent class litigation).

Indeed, the Ninth Circuit in *Stetson v. West Publishing Corp.*, Case No. 13-57061, at *14 (9th Cir. May 11, 2016), recently explained that district courts "must" apply a risk multiplier in awarding attorneys' fees in class settlements "when (1) attorneys take a case with the expectation they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky.'"  The Ninth Circuit also noted that a court has discretion to apply a multiplier based on the following factors: "the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment."  *Id.*; *see also Florin v. Nations Bank of Georgia*, 34 F.3d 560, 564 (9th Cir. 1994) ("Having determined that risk multipliers remain available in common fund cases after *Dague*, we further note that we have held, in pre-*Dague* case, that a risk multiplier is not merely available in common fund cases but mandated, if the court finds that counsel

had no sure source of compensation for their services....  Moreover, we have observed that the need for such an adjustment is particularly acute in class action suits.  The lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent.").

In this case, this Court should apply a multiplier pursuant to *Stetson* and *Florin*.  The hours expended and the investment of such time was always at risk with the commencement and continued litigation of each Action.  Risks included previous denials of class certification against plaintiffs and uncertainty in California law including that related to meal and rest breaks, class certification and PAGA.  Had the mediation not been successful, Plaintiffs faced significant risk, including potentially losing on summary judgment or on the Defendants' Motion for Decertification in the *Dynabursky Action*, or even not being able to recovery a full judgment if judgment was issued in an amount greater than the amount settled for.  While Class Counsel continued to be at risk if the Actions were lost and, thus, subject to a loss of all time and money expended, Defendants' counsel were being paid for all hours worked regardless of the outcome.[6]  One side (Class Counsel) was spending their own money, while the opposing counsel was not.  Undeniably, Class Counsel took an enormous risk, managed that risk throughout the case, and now submit that they should be rewarded for assuming that risk and eventually obtaining a substantial settlement. Class Counsel's hourly rates representing reasonable rates given the caliber, skill, reputation and experience of Class Counsel and do not take into account the risk assumed by taking this case.  In particular, Mssrs. Lee and Hyun's standard hourly rate of $650 and Mr. Choi's standard hourly rate of $700 have been approved by numerous other courts.  (Lee Decl. ¶ 10; Hyun Decl. ¶ 11; Choi Decl. ¶ 11).  Similarly, the standard hourly rates for Babeshkov and Aguirre's counsel are $550-$775 per hour.  (Hawkins Decl. ¶23; Richard Decl. ¶¶5, 8, 26; Robbins Decl. ¶22).  These unadjusted rates are standard and, thus, do not take into account the risks associated with litigation.  Accordingly, a multiplier of 1.85 represents a very minimal upward adjustment of fees that properly rewards Class Counsel for the efforts expended, as well as the results achieved.

---

[6] Based on data received from the 2013 NLJ Billing Survey, partner rates at two surveyed defense firms in region where the action is located – Los Angeles- ranges from $495 to $950 per hour while the high for associate rates in 2013 is $535 per hour.  ALM Legal Intelligence, 2013 NJL Billing Summary citing *National Law Journal*, December 2013.  Class Counsel Matthew Dente previously was employed at one of the surveyed firms – Sheppard, Mullin, Richter & Hampton.

Significantly, the Class has obtained a substantial financial result, in that Defendants have agreed to pay a non-reversionary settlement of $11 million.  As the Court noted in its Order granting preliminary approval, this was approximately 27.5% of the potential maximum recovery, which is on the high end of wage and hour settlements.  (*See* Dkt. No. 121 at pp. 13-14).  Indeed, this Court in *Vandervort*, 8 F. Supp. 3d at 1209-10, approved of a multiplier of 2.52, in awarding 33 1/3% of the common fund.  Likewise, numerous other courts have approved of a multiplier in awarding attorneys' fees.  *Boyd v. Bank of Am. Corp.*, 2014 U.S. Dist. LEXIS 162880 at *22-*23 (C.D. Cal. Nov. 18, 2014) (awarded 1/3 of the common fund based on a 2.58 multiplier of the lodestar); *Fadhl v. Police Dept., City & County of San Francisco*, 1983 WL 514 (N.D. Cal. May 12, 1983) (finding multiplier of 2.5 to be appropriate).

## V.  THE COURT SHOULD APPROVE THE REQUEST FOR REIMBURSEMENT OF COSTS

The request for reimbursement of costs, in the amount of $58,735.15 is fair and reasonable. The settlement provides that Class Counsel may seek actual litigation costs which were not expected to exceed $100,000. All costs incurred and sought are necessary litigation related costs benefitting the Class Members, which have been detailed in the supporting declarations of Class Counsel.  (Lee Decl. ¶ 11, Exh. B; Choi Decl. ¶ 14, Exh. B; Hawkins Decl. ¶25, Ex. 2; Robbins Decl. ¶25).  The authority for the Court to award costs is the parties' Settlement Agreement and Labor Code Sections 218.5, 226(e), 1194, and 2699(g)(1).  Further, pursuant to the Settlement Agreement, Defendant has agreed not to oppose any request for reimbursement of costs. Pursuant to all of the authority cited above, including this Court's opinion in *Vandervort*, 8 F. Supp. 3d at 1209-10, Class Counsel respectfully request that their costs be awarded.

## VI.  THE REPRESENTATIVE SERVICE PAYMENTS SHOULD BE APPROVED

Plaintiffs respectfully request that the full amount of the service payments be awarded to Plaintiffs for their efforts that they displayed on behalf of the Class Members.  It is commonly held that it is appropriate to recognize the role of the representative plaintiffs without whose actions and courage the benefits of the settlement, which are conferred on the class as a whole, would never have been achieved.  The criteria courts may consider in relation to incentive payments include: 1) the risk to the class representative in commencing the suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class

23

representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.  *See Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles*, 186 Cal. App. 4th 399, 412 (2010) (citing *Stanton v. Boeing Co*., 327 F.3d 938, 975 (9th Cir. 2003)).  Each of these factors favors the service awards requested in the present case.

Prior and subsequent to the filing of this lawsuit, Plaintiffs contacted and had numerous communications with their counsel.  (Declaration of Gregory Dynabursky ("Dynabursky Decl.") ¶ 2; Declaration of Mikhail Babeshkov ("Babeshkov Decl.") ¶ 7; Declaration of Jose Aguirre ("Aguirre Decl.") ¶ 5).   Further, Dynabursky sat for his deposition.  (Dynabursky Decl. ¶ 2).  Plaintiffs provided documents, witness information and other evidence supporting the facts alleged and the claims that were litigated.  Dynabursky Decl. ¶ 2; Babeshkov Decl. ¶ 7; Aguirre Decl. ¶ 5).  Plaintiffs have spent substantial time and effort in prosecuting this case on behalf of the class and the State of California as a private attorneys general, and have placed themselves at risk for the benefit of the Class, including potentially having to pay for Defendants; fees and costs had Defendant prevailed.  (*Id.*)  Plaintiffs' estimated time spent on this case are set forth in their accompanying Declarations.  (*Id.*)

Further, as noted above, Plaintiffs filed claims against a major employer.  (Dynabursky Decl. ¶ 3; Babeshkov Decl. ¶ 8; Aguirre Decl. ¶ 4).  This is a risk that is serious and significant.  (*Id.*)  It is a risk that they bore for the Class, as Class Members have not needed to take that risk in order to receive the benefits provided in this settlement.  (*Id.*)  Additionally, as noted above, given that future employers are less likely to hire individuals who have filed lawsuits against their previous employers, Plaintiffs may certainly face significant risks in not being able to find suitable employment.  When seeking employment, one will have to reveal the name of his or her former employer to the prospective employer.  Should the prospective employer simply "google" Plaintiffs and Defendants' names, they will likely find articles on this settlement, as it has been reported on websites such as Law360.com.

Plaintiffs took these risks upon themselves from which the whole Class benefitted.  Class members did not have to file individual lawsuits, nor did they have to bear the risks of payment of fees and costs should they not prevail.  Class members also do not have to face the risk of potential retaliation or risk of future employment, due to the efforts of Plaintiffs.  In short, Plaintiffs have sacrificed a significant amount of time, effort, and their own rights in bringing about the benefits to the class.

The payment of enhancement awards to successful class representatives is appropriate and the amount of $10,000 to each Plaintiff is within the typically accepted range.  *See e.g. Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) (incentive award of $50,000); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) (two incentive awards of $55,000, and three incentive awards of $ 35,000); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913-14 (S.D. Ohio 2001) (granting a $50,000 Incentive award); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 251-252 (S.D. Ohio 1991) ($50,000 awarded to each class representative); *Glass v. UBS Fin. Servs.*, No. C-06-4068, 2007 U.S. Dist. LEXIS 8476, at *51-52 (N.D. Cal. Jan. 27, 2007) (awarding $25,000 Incentive award in FLSA overtime wages class action); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 Incentive award to class representative in ERISA case).  Moreover, a $10,000 service payment represents a mere 0.09% of the settlement amount, while the requested $30,000 in service payments *in toto* to all three Plaintiffs is approximately just 0.3% of the settlement fund.  For such reasons, Plaintiffs respectfully request that this Court find the service payments amount of $10,000 to each Plaintiff is fair, reasonable and adequate and that the service payments be awarded to Plaintiffs.

## VII.    CONCLUSION

Plaintiffs and Class Counsel respectfully submit that the motion for approval of attorneys' fees, costs, and representative service payment should be granted.  Whether analyzed under the percentage of the fund approach, which is the dominant view, or via the cross-check approach under the loadstar/multiplier approach, the fees are fully supported. The Actions have been litigated from the onset in light of significant risk, demanded an extraordinary effort on the part of Class Counsel and Plaintiffs, and further required substantial costs advanced.  Based on the foregoing, Plaintiffs and Class Counsel respectfully request that this Motion be granted in its entirety.

DATED: June 27, 2016                    DIVERSITY LAW GROUP, P.C.

                                        By:    /s/
                                               _____
                                               LARRY W. LEE
                                               Attorneys for Plaintiff
                                               GREGORY DYNABURSKY, as an
                                               individual and on behalf of all others
                                               similarly situated

25